**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

INGE GOODSON,

     *Plaintiff*,

v.

BANK OF AMERICA, N.A.,

     *Defendant*.

Case No. 1:12-cv-00065

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Bank of America, N.A. ("BANA" or "Defendant"), by its undersigned attorney, respectfully submits this Memorandum of Law in Support of its Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. BANA states that there are no genuine issues of material fact and BANA is entitled to judgment as a matter of law. In support of the Motion for Summary Judgment, BANA states as follows:

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff owned property located at 6914 Mcadoo Branch Road, Lyles, Tennessee 37098 (the "Property"). (Statement of Undisputed Material Facts ("SOF") at ¶2; Exhibit B.) On March 21, 2008, Plaintiff refinanced her home loan with Taylor, Bean and Whitaker Mortgage Corporation in the amount of $235,226.00. *(See* SOF at ¶1; Exhibit A.) Plaintiff admits that she defaulted on her mortgage obligations in 2009. *(See* SOF at ¶4; Exhibit L at 20:18-21:2.) As a result of the default and failure to pay her loan, Plaintiff lost the Property through foreclosure on August 3, 2010. *(See* SOF at ¶7; Exhibit L at 24:21-25.) Following the foreclosure, Plaintiff remained living in the Property and currently is still living in the Property. *(See* SOF at ¶8;

Exhibit L at 5:9-13.) Plaintiff has not made any payments on her loan or rent payments for the Property since March 2009. *(See SOF at ¶9; Exhibit L at 20:24-21:16.)*

Plaintiff received a letter from BAC Home Loan Servicing, LP ("BACHLS")[1], dated August 23, 2009, containing a Fair Debt Collection Practices Act ("FDCPA") disclaimer and informing Plaintiff that the Government National Mortgage Association ("Ginnie Mae") was the creditor to whom Plaintiff owed the debt ("August 23 Letter"). *(See SOF at ¶5; Exhibit D.)* Nearly nine months later, on or about May 10, 2010, Plaintiff received a letter from Shapiro & Kirsch, LLP, dated May 6, 2010, stating that Shapiro & Kirsch was retained to collect a debt owed to BACHLS ("May 6 Letter"). *(See SOF at ¶6; Exhibit E.)* The foreclosure occurred on August 3, 2010. *(See SOF at ¶7; Exhibit L at 24:21-25.)*

Then, on or about July 8, 2011, Plaintiff received correspondence from BANA ("July 8 Letter"), stating that the servicing of her home loan was transferred from BACHLS to BANA. *(See SOF at ¶10; Exhibit F .)* Included with the July 8 Letter was a notice informing Plaintiff that as of June 30, 2011, the amount outstanding on the loan was $278,681.40. (*Id.*) On July 13, 2011, BANA sent Plaintiff a letter ("July 13 Letter") informing her that the July 8 Letter was sent in error and asking Plaintiff to disregard the July 8 Letter. *(See SOF at ¶12; Exhibit G.)* Plaintiff admits that she received the July 13 Letter. *(See SOF at ¶12; Exhibit L at 27:13-25.)*

On July 8, 2011, Plaintiff sent a letter to BANA disputing the debt mentioned in the July 8 Letter. *(See SOF at ¶13; Exhibit H.)* In response to Plaintiff's letter disputing the debt, Plaintiff received a letter dated October 7, 2011, from Blank Rome LLP, that advised Plaintiff of the current status of the debt, provided the note and deed of trust as evidence of that debt, and included a payment history on Plaintiff's loan ("October 7 Letter"). *(See SOF at ¶18; Exhibit I.)* Neither the July 8 Letter from BANA nor the October 7 Letter included a demand for payment,

---

[1] BACHLS is the predecessor in interest to Bank of America, N.A.

991518:1:NASHVILLE

indicated payment due dates, or indicated that Plaintiff would suffer negative consequences if she failed to make a payment on her loan. (*See* SOF at ¶ at ¶ 10-21; Exhibits F and I.)

Plaintiff contends that these four letters violate the FDCPA "because they contain false, deceptive or misleading representations." (Compl. at ¶23.) As a result of these correspondences, Plaintiff seeks actual and statutory damages, although her Complaint contains no allegation that she suffered any actual damages. (*See generally* Compl.) Likewise, Plaintiff failed to produce sufficient evidence of actual damages in discovery. *(See* SOF at ¶¶ 17-27; Exhibits C, J and K.) As explained below, however, all of Plaintiff's claims fail, and summary judgment should be granted in favor of BANA.

## LEGAL STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997) (quoting Fed. R. Civ. P. 56(c)). The moving party bears the initial burden of pointing to portions of the record which demonstrate that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets that burden, the non-moving party must produce evidence which shows that "the reasonable jury could find for [the non-moving party]." *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 576 (6th Cir. 2004) (internal quotation omitted). Although the evidence is viewed in the light most favorable to the non-moving party, that party must demonstrate more than the "mere possibility" of a factual dispute. *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986); *see also Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000).

991518:1:NASHVILLE

Accordingly, summary judgment will be appropriate where the moving party identifies portions of the record which show that there is no genuine issue of material fact and the non-moving party fails to produce evidence which shows more than the mere possibility of a factual dispute. *See, e.g., Catrett*, 477 U.S. at 323; *Gregg*, 801 F.2d at 863. In the circumstances of this case, the evidence obtained in the discovery process will demonstrate that no genuine issue of material fact exists and that Defendants are entitled to judgment as a matter of law as to all of Plaintiffs' claims. Accordingly, the Court should enter summary judgment in favor of Defendants.

## ARGUMENT

BANA is entitled to summary judgment in its favor. Plaintiff bases her claim on four letters that she alleges violate the FDCPA. Her FDCPA claim based on the August 23 Letter and May 6 Letter is time barred. In addition, BANA is entitled to summary judgment on Plaintiff's claim based on the July 8 Letter and October 7 Letter because the undisputed facts show that these letters are not debt collection activities and, therefore, are not subject to the FDCPA. Accordingly, the Court should grant summary judgment in favor of BANA.

I.  **PLAINTIFF'S FDCPA CLAIM BASED ON THE AUGUST 23 LETTER AND MAY 6 LETTER IS TIME BARRED.**

The undisputed facts show that BANA sent and Plaintiff received the August 23 Letter and May 6 Letter more than one year before Plaintiff filed her Complaint, making any claims based on those letters time barred under the FDCPA's one-year statute of limitations. Accordingly, the Court should enter summary judgment in BANA's favor on these claims.

Under the FDCPA, "[a]n action to enforce any liability created by this subchapter may be brought . . . within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). An FDCPA claim accrues immediately following the alleged FDCPA violation and an FDCPA

claim must be brought within one year of accrual. *Maloy v. Phillips*, 64 F.3d 607, 608 (11th Cir. Ga. 1995) ("[The plaintiff] was required to bring this action within one year from the date that the alleged violation of the FDCPA occurred, and the calculation of the time period begins on the day after the alleged violation occurred."). Although the Sixth Circuit has not addressed the issue, other circuit courts have found that the FDCPA statute of limitations begins running when the letter at issue is mailed.[2] *Maloy,* 64 F.3d at 608; *Mattson v. U.S. West Commc'ns*, 967 F.2d 259, 261 (8th Cir. 1992). The Eighth and Eleventh Circuits reason that because the intent of the FDCPA was to regulate debt collectors, the statute of limitations begins running at the last chance the defendant had to comply with the statute, or at the mailing of the letter. *Maloy,* 64. F.3d at 608; *Mattson*, 967 F.2d at 261. Both courts also noted that the mailing date is the more practical approach because it is "easy to determine, ascertainable by both parties, and may be easily applied." *Mattson*, 967 F.2d at 261.

As a result, Plaintiff's claim is barred to the extent that it is based on the August 23 Letter and May 6 Letter. The August 23 Letter was mailed on August 23, 2009, and Plaintiff remembers receiving that letter. *(See* SOF at ¶5; Compl. at ¶ 13; SOF, Exhibits D and L.) Accordingly, Plaintiff must have filed any FDCPA claims based on that letter by August 23, 2010. Similarly, Defendant mailed the May 6 Letter on May 6, 2010, and Plaintiff received that letter on May 10, 2010. *(See* SOF at ¶ 6; Compl. at ¶ 15; SOF, Exhibit E.) Plaintiff would have had to file any FDCPA claims based on that letter by May 6, 2011. As Plaintiff did not file the Complaint until July 6, 2012, her claim is time barred to the extent that it is based on the August 23 Letter or May 6 Letter. *(See* SOF at ¶¶ 5-6; Exhibits D and E.) As no genuine issue of

---

[2] The Second Circuit has indicated in dicta that an FDCPA action *might* not accrue until receipt of the letter. *Bates v. C&S Adjusters, Inc.,* 980 F.2d 865, 868 n.2 (2d Cir. 1992) (emphasis added).

material fact exists as to whether the claim based on these two letters is time barred, the Court should grant summary judgment in favor of BANA on these claims.

## II.     BANA IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S REMAINING FDCPA CLAIM.

As no genuine issue of material fact exists as to Plaintiff's claims based on the remaining two letters (July 8 Letter and October 7 Letter), BANA is entitled to summary judgment in its favor on those claims.  The undisputed facts show that these letters were merely informational communications, not debt collection activities, and are therefore not subject to the FDCPA. Accordingly, the Court should enter summary judgment in favor of BANA.

To be liable under the FDCPA, "a debt collector's targeted conduct must have been taken 'in connection with the collection of any debt' or in order 'to collect any debt.'"  *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 459-60 (6th Cir. 2013) (internal citations omitted).  "[I]t is clear that "the statute does not apply to *every* communication between a debt collector and a debtor." *Grden v. Leiken Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011) (quoting *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 385 (7th Cir. 2010) (emphasis in original)).  Courts have recognized that no bright-line rule exists to determine whether a communication is "debt collection activity."  *Gburek*. 614 F.3d at 384.  For a communication to fall under the FDCPA, however, "an animating purpose of the communication must be to induce payment by the debtor."  *Grden*, 643 F.3d at 173.  Ultimately, the goal of the Court is to determine whether the true purpose of the communication is to collect debt.  *See Maynard v. Cannon*, 401 F. App'x 389, 395 (10th Cir. 2010).

Accordingly, in making this determination, courts weigh a variety of factors, including whether the communication included an explicit demand for payment.  *Grden*, 643 F.3d at 173. Courts will also consider whether the loan is in default.  *Gburek*, 614 F.3d at 385.  Further,

courts consider whether any payment dates listed in the communication are prospective, simply warning the debtor of the consequences of missing a future payment. *Bailey v. Sec. Nat'l Servicing Corp.,* 154 F.3d 384, 389 (7th Cir. 1998). "The nature of the parties' relationship is also relevant." *Gburek*, 614 F.3d at 385. Lastly, communications that "merely inform" the debtor of the current status of a debt are not debt collection activities. *Bailey*, 154 F.3d at 38-89; *Grden*, 643 F.3d at 173.

> i.      *The July 8 Letter*

The July 8 Letter makes clear that its purpose was merely to inform borrowers of a change in their loan servicer. (*See* SOF, Exhibit F at ¶10.) The first page of the letter, in a section titled "Important Message About Your Loan," states only:

> Effective July 1, 2011, the servicing of home loans by our subsidiary-BAC Home Loans Servicing, LP, transfers to its parent company-Bank of America, N.A. Based upon our records as of June 30, 2011, the home loan account noted above is affected by this servicing transfer. The information contained in this communication does not change or affect any other communications you may have received or will receive regarding this servicing transfer.

(*See* SOF, Exhibit F at ¶1.) As to the amount of Plaintiff's debt, the notice enclosed with this letter simply informs Plaintiff of the amount of her outstanding debt. (*See* SOF, Exhibit F at p. 3.) Nowhere in the "Important Message" section, or elsewhere in the letter or notice, does BANA make a demand for payment. (*See generally id*.) In regards to the amount of Plaintiff's debt, the notice states:

> (a) The amount of the debt: As of June 30, 2011, you owe $278,681.40. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Therefore, *if* you pay the amount shown above, an adjustment may be necessary after we receive your payment, in which event we will inform you or your agent before accepting the payment for collection.

991518:1:NASHVILLE

(*Id.*) (emphasis added).)   It stands to reason that if the purpose of the letter was to induce

payment, the "Important Message" section of the letter would at least request payment.   The

letter neither indicates a due date for a past or future payment nor indicates that any negative

consequences will befall Plaintiff if she fails to make a payment.  (*Id.*)

In her deposition, Plaintiff was asked to identify where the July 8 Letter makes a demand

for payment.  *(See* SOF at ¶ 11; Exhibit L at 25:14-15.)  The only specific demand she was able

to identify was an FDCPA notice at the bottom of the first page of the letter:

Q:      Where in this letter does it demand that you make any payments?

A:      It says it's a collection, right down here.  It says they're attempting to collect a debt.

Q:      Right down where?

A:      Down on the first – bottom of the first page.

Q:      Are you looking at the bold lettering at the bottom where it says, Bank of America, N.A. is required by law to inform you that this communication is from a debt collector?

A:       Yes.

Q:      And this is what gives you pause and makes you think that this was a letter attempting to collect a debt?

A:       Yes.

*(See* SOF at ¶11; Exhibit L at 25:14-26:4.)  This FDCPA notice, however, is not enough to

impose liability on BANA.  "The inclusion of the FDCPA notice is legally irrelevant" to the

determination of whether a communication is a debt collection activity.  *Maynard*, 401 F. Appx.

389 at 395; *see also Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 399 (6th Cir. 1998) ("[T]he

mere fact that the letter states at the bottom that it 'is an attempt to collect a debt' does not

transform the letter into an unlawful demand for payment.").

- 8 -

Plaintiff was unable to identify any other places where the letter makes a demand for payment:

> Q: Where else in this letter, if anywhere, does it state that Bank of America is attempting to collect any money from you?
>
> A: It says on the second page, the amount of debt, as of June 30th, 2011, you owe $278,6 -- $278,000.
>
> Q: Where in this letter does it demand that you pay any amount?
>
> A: Well, everywhere. It's attempting to collect a debt and debt collectors usually collect debts. And if they're saying that I owe that debt, they're going to collect it from me.
>
> . . .
>
> Q: Where in this letter does it ask that you make any payments to Bank of America?
>
> A: It says **if** you pay the amount shown above, the adjustments may be necessary when we receive your payment. (emphasis added)
>
> Q: And that's what you take to be a demand for a specific amount of payment?
>
> A: Yes.

*(See* SOF, Exhibit L 26:5-27:7.) (***emphasis added****.*) It is clear from this exchange that nothing Plaintiff believed to be a demand for payment was actually a demand for payment. Although Plaintiff may have believed BANA was demanding payment, her subjective belief is irrelevant to the FDCPA inquiry. *See Gburek*, 614 F.3d at 385 (stating that the standard for determining whether a communication is debt collective activity is an objective one). The only language in the letter that refers to payments clearly states "*if* you pay the amount." (*See* SOF, Exhibit F.) The very use of the word "if" indicates that any payment was voluntary. Had BANA intended to induce payment with this letter, it would have used mandatory language, such as instructing Plaintiff that she "must" make a payment or that payment "was required." An "if" statement

- 9 -

such as the one in this letter does not imply that Plaintiff would suffer adverse consequences if she did not make a payment. Viewing this letter objectively, it was merely an informational letter to inform Plaintiff of a change in the loan servicer on her loan and not part of a debt collection activity.

The undisputed facts show that the July 8 Letter was not a "debt collection activity" and, therefore, not subject to the FDCPA. Thus, the Court should grant summary judgment in favor of BANA on Plaintiff's claim to the extent that it arises from the July 8 Letter.

  ii.  *The October 7, 2011 Letter*

Similarly, the purpose of the October 7 Letter was merely to respond to and inform Plaintiff of the validity of the debt; the purpose of the letter was not to collect a debt. In fact, the letter explicitly states that it is for "the sole purpose of responding to [Plaintiff's] correspondence dated July 8, 2011" in which she disputed the validity of the debt. *(See* SOF, Exhibit I.) Additionally, the letter does not make any demand for payment on the loan, and it does not include any past or future payment due dates. (*See* SOF, Exhibit I.) *Grden*, 643 F.3d at 173; *Bailey,* 154 F.3d at 389.

The relationship between the parties also indicates that the October 7 Letter was not a "debt collection activity." *See Gburek*, 614 F.3d at 385. The law firm of Blank Rome, LLP sent the October 7 Letter. (*See* SOF at ¶14, Exhibit I.) The law firm that conducted the foreclosure activities on Plaintiff's home, however, was Shapiro & Kirsch. *(See* SOF at ¶16; Compl. at ¶ 17.) Accordingly, Plaintiff cannot show that she had any previous relationship with Blank Rome, LLP that would suggest that the letter was sent in connection with the collection of a debt.

The purpose of the October 7 Letter was simply to inform Plaintiff of the status of her debt per her own request. *See Grden*, 643 F.3d at 173 ("[T]he decisive point is that [the

defendant] made the balance statements only after [the plaintiff] called and asked for them.") All that the letter does is reference the Note and Deed of Trust as evidence of Plaintiff's debt, as well as supply the name of the current owner and servicer of the loan. (*See* SOF, Exhibit I.) The letter also supplies a payment history on the loan and outlines fees previously charged to the account that are not reflected in the payment history. (*Id*.) Once again Plaintiff was unable to identify any demand for payment in the letter. When asked in her deposition where the letter demanded payment, Plaintiff could only point to a statement in the letter that a "payoff demand statement" would be sent to Plaintiff separately:

> Q:    Can you tell me where in this page-and-a-half of the actual letter Bank of America is demanding payment from you?
>
> . . .
>
> A:    To me, a payoff demand statement means they are demanding a payment of the amount up here of 235,000, plus the fees that they charged.
>
> Q:    So that paragraph of this letter is what you believe to be a demand for payment by Bank of America?
>
> A:          Yes.

(*See* SOF, Exhibit L at 40:3-41:5.)

Viewing the letter objectively, however, it is clear that the letter does not demand a payment and does not indicate that the payoff statement will demand payment. (*See* SOF, Exhibit I.) In fact, Plaintiff's belief is objectively unreasonable in light of the additional statement in the October 7 Letter that the payment demand statement "will show all amounts necessary to pay off the Loan" but does not mention that the statement will include any payment due dates or require Plaintiff to make a payment. (*Id*.) The October 7 Letter was "merely a ministerial response to a debtor inquiry, rather than part of a strategy to make payment more

likely," and therefore not a "debt collection activity" subject to the FDCPA. *Grden*, 643 F.3d at 173.

The undisputed evidence on the record shows that Plaintiff cannot establish that the letters at issue in this case were "debt collection activities" subject to the FDCPA. Viewed objectively, the record establishes only that the July 8 Letter and the October 7 Letter were informational communications regarding the status of Plaintiff's debt. Courts have routinely found that these types of communications are not "communications made in connection with the collection of debt" and fall outside of the purview of the FDCPA. Accordingly, no genuine issue of material fact exists as to whether these letters are "debt collection activities" subject to the FDCPA. The Court should enter summary judgment in favor of BANA.

## III.    BONA FIDE ERROR

Even if the Court finds that BANA committed an FDCPA violation related to the July 8 Letter, BANA is not liable to Plaintiff because any violation was a bona fide error and BANA immediately notified Plaintiff of such. Accordingly, BANA is entitled to summary judgment in its favor.

The FDCPA provides a "bona fide error" defense to debt collectors that can show that mistake, rather than mal intent, caused a violation of the act. The FDCPA states:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c).

The evidence on the record shows that if the Court determines that the July 8 Letter meets the criteria to be a debt collection activity pursuant to the FDCPA, the mailing of the July 8

Letter was a bona fide error. BANA quickly notified Plaintiff of its mistake in sending the letter and notified Plaintiff that she could disregard the letter. (*See* SOF, Exhibit G.) The letter states:

> Between late June and early July we mailed you a "Fair Debt Collection Practices Act and State Law Notice" in connection with your prior home loan account noted above. We are writing to let you know that this Notice was sent to you in error and ask that you disregard it. We apologize for any confusion this may have caused.

(*Id.*) The language of this letter shows that the violation was both unintentional and a bona fide error. In addition, the quick correction is evidence that BANA had a system in place to detect and correct mistakes.

As demonstrated above, BANA has met its burden of showing that if the Court determines that the July 8 Letter meets the FDCPA criteria for debt collection activities, that it was a bona fide error. Accordingly, BANA is entitled to the bona fide error defense, and summary judgment should be granted in BANA's favor.

## IV. PLAINTIFF CANNOT RECOVER ACTUAL DAMAGES.

The only reference to actual damages in Plaintiff's Complaint is a statement that she "is entitled to an award [of] 'any actual damages sustained' by her 'as a result' of the violation," as well as a request for actual damages in her prayer for relief. (Compl. at ¶ 32.) In discovery, Plaintiff indicates that she is seeking emotional harm damages. *(See* SOF at ¶17; Exhibit J at ¶¶ 10-11.) The Complaint does not, however, allege any specific facts that support a claim for actual damages. (*See generally* Compl.) In addition, Plaintiff has not, and cannot, prove that the July 8 Letter or October 7 Letter caused her actual damages. Accordingly, no genuine issue of material fact exists as to whether Plaintiff can recover actual damages, and BANA is entitled to summary judgment in its favor on Plaintiff's request for actual damages.

991518:1:NASHVILLE

Although the Sixth Circuit has not determined the level of evidence required to prove emotional damages under the FDCPA, district courts within the Sixth Circuit have applied the evidentiary standard for plaintiffs seeking emotional damages under the Fair Credit Reporting Act (FCRA), a similar statute. *See, e.g., Hoffman v. GC Servs. Ltd. P'ship*, 3:08-CV-255, 2010 WL 9113645, at *19 (E.D. Tenn. Mar. 3, 2010); *Kaplan v. Experian, Inc.*, No. 09-10047, 2010 WL 2163824, at *8 (E.D. Mich. May 26, 2010). First and foremost, to recover actual damages, a plaintiff must show that a violation of the statute caused the plaintiff harm. *Bach v. First Union Nat'l Bank,* 149 Fed. Appx. 354, 360–61 (6th Cir. 2005). A plaintiff seeking emotional damages under the FDCPA must provide "actual evidence of distress and injury, not merely conclusory statements." *Hoffman*, 2010 WL 9113645, at *19. Although the injured person's testimony alone may suffice to establish damages for emotional distress, the testimony must "reasonably and sufficiently [explain] the circumstances surrounding the injury" and must "not rely on mere conclusory statements." *Bach,* 149 Fed. Appx. at 361 (citing *United States v. Balistrieri,* 981 F.2d 916, 931-32 (7th Cir. 1992)). Courts maintain a strict standard for a finding of emotional damages "because they are so easy to manufacture." *Sarver v. Experian Info. Solutions*, 390 F.3d 969, 971 (7th Cir. 2004) (quoting *Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 880 (7th Cir. 2001)).

Plaintiff has not established that she is entitled to actual damages under the FDCPA. Plaintiff cannot prove the either the July 8 Letter or the October 7 Letter was the cause of any actual damages that she suffered. In addition, the evidence that Plaintiff has produced of any damages that occurred after July 2011 is negligible and does not meet the strict standard required to prove emotional damages. Accordingly, the Court should grant summary judgment in favor on BANA on Plaintiff's claim for actual damages.

- 14 -

i.      *Plaintiff Cannot Prove that Either the July 8 Letter or the October 7 Letter Caused Her Actual Damages.*

In discovery, Plaintiff indicates that she is seeking emotional harm damages.  (*See* SOF at ¶17; Exhibit J at ¶¶ 10-11.)  BANA then requests that Plaintiff produce "any and all documents which demonstrate that [Plaintiff] suffered damages as a result of" each of these two letters.  *(See SOF at ¶20; Exhibit K at ¶¶ 12-13.)*   The documents that Plaintiff produced, however, do not establish that Plaintiff suffered emotional damages as a result of the July 8 Letter or October 7 Letter.  (*See* SOF, Exhibit K.)  In fact, the only document produced that speaks to emotional damages potentially occurring in July 2011 or later is an unsworn statement purportedly written by Plaintiff and attached to a request for independent foreclosure review dated April 20, 2012. (*See* SOF, Exhibit K at ¶12.)  This statement says that Plaintiff has "a list of doctors and therapist [sic]" that she "went to from 2009 until present" and indicates that she suffered from panic attacks at work.  (*Id*.)  Plaintiff did not, however, provide any list of doctors to BANA, and her sworn deposition testimony contradicts any implication that she saw multiple doctors.  (*See* SOF, Exhibit K and Exhibit L at 16:7-17 (stating that she has not seen a doctor for any reason since the beginning of 2011).)  In addition, Plaintiff produced this statement in response to the question: "Describe any other way in which you may have been financially injured *as a result of the mortgage foreclosure* process," indicating that Plaintiff believes the foreclosure, rather than the July 8 Letter or October 7 Letter, caused the harm mentioned in the statement.  (*See* SOF, Exhibit K.) (emphasis added).

Plaintiff's deposition further clarified that the emotional damages Plaintiff speaks of in this statement could not have been caused by the July 8 Letter or October 7 Letter.  First, Plaintiff's deposition testimony establishes that she left her job at Southeastern Pant Company in March 2011, *before* she received either of the letters at issue in this case:

- 15 -

Q: What was your last position that you held?

A: It was at Southeastern Pant Company in Centerville in 2011.

. . .

Q: Do you know the date that you gave notice?

A: It was March, middle of March 2011. Actually, I gave notice about three weeks prior.

(*See* SOF, Exhibit L at 13:7-24.) Similarly, Plaintiff testified that the doctor and therapist appointments took place before July 2011:

Q: Did you seek treatment for your panic attacks at that time?

A: Yes, I did.

Q: Who did you seek treatment with?

A: Mary Clare Champion, psychologist, at Three Rivers in Lyles.

Q: How many times did you see her?

A: I'm not really sure about how many times, but it was right after – the first time was after the foreclosure sale in 2010. I believe it was in September. And then through – I'm really not sure, for six, seven months maybe. I would have to check the records.

Q: So beginning September in 2010 for about six or seven months after that?

A: I believe that's – I'm not sure, but I believe that's correct.

(*Id*. at 13:25-14:16.) Lastly, Plaintiff's testimony also shows that she stopped taking the medication that Dr. Champion prescribed to her before July 2011:

Q: Did she prescribe any other medication besides antidepressant?

A: No.

Q: Are you still on that antidepressant?

A: No, I'm not.

Q: When did you stop taking that?

- 16 -

A:      I'm not sure about that either, but I stopped taking it.

Q:      Did the prescription continue for a time after you stopped seeing Ms. Champion?

A:      No.  Actually it was while I was seeing her, I went off them.

(*Id*. at 15:2-13.)

It is clear from this testimony that Plaintiff had panic attacks, left her job, stopped seeing Dr. Champion, and stopped taking her prescription medication *before* she received either of the only two letters relevant to this case.  Her testimony indicates that the foreclosure sale and not any letters that she received from BANA prompted her to begin seeing a therapist and quit her job.  (*Id*. at 13:7-12; 49:11-14.)  In addition, Plaintiff cannot recover actual damages caused by either of the first two letters, as any claims based on those letters are time barred.  Accordingly, the Court should disregard any evidence of damages that occurred prior to July 2011, as the July 8 Letter and October 7 Letter could not have caused the alleged damages.

The only evidence that Plaintiff provides of actual damages after July 2011 is her self-contradictory testimony that she scheduled an appointment with her therapist in July 2011.  (*See* SOF at ¶¶ 24-25; Exhibit L at 31:3-13.)  Even if Plaintiff did visit her therapist after July 2011, she cannot establish that the July 8 Letter, and not the foreclosure or earlier letters, caused that visit, especially when her testimony indicates that any visit that occurred was the last in a series of visits dating back to the foreclosure.  (*See* SOF, Exhibit L at 13:7-12.)  In addition, on July 13, 2011, only five days after Plaintiff received the July 8 Letter, BANA sent Plaintiff a second letter informing Plaintiff that the July 8 Letter was sent in error and asking Plaintiff to disregard it.  (*See* SOF at ¶ 12; Exhibit G.)  Plaintiff admits that she received this letter dated July 13, 2011.  (*See* SOF, Exhibit L at 27:13-14.)  As a result, she cannot reasonably attribute any mental distress that she experienced more than a few days after receipt of the July 8 Letter to that letter.

- 17 -

Plaintiff has provided no evidence of actual damages that she incurred after October 7, 2011. (*See* SOF at ¶¶ 17-27; Exhibits J, K and L.)  Accordingly, Plaintiff cannot prove that the July 8 Letter or the October 7 Letter cause her actual damages.

ii.     *Plaintiff's Evidence of Actual Damages Does Not Meet the Required Standard.*

The only evidence that Plaintiff provides of actual damages after July 2011 is her contradictory testimony that she scheduled an appointment with her therapist in July 2011:

Q:      You say you scheduled an appointment with your therapist then in July of 2011?

A:      Yes.

Q:      I thought we had established earlier in your deposition that you had not seen her since sometime the beginning of 2011.

A:      It was from 2010, August, through six or seven months. I said I wasn't really sure about the dates, but I remember that specific letter, but I don't remember the specific date.  I mean, I just scheduled an appointment.

(*See* SOF, Exhibit L at 31:3-13.)  Plaintiff then testified that she does not remember if she continued to see her therapist for a period of months after receiving the July 8 Letter and that she did not take the medication she had previously been prescribed after receiving that letter.  (*Id.* at 33:1-10.)  Earlier in her deposition, when specifically asked if she had seen a doctor for any reason since the beginning of 2011, Plaintiff testified that she had not.  (*Id.* at 16:14-17.)  Plaintiff does not remember how long after receiving the letter she saw her therapist.  (*Id.* at 32:32:20-25.)  In addition, Plaintiff testified that she does not keep calendars or appointment books that would indicate when she had appointments with her therapist.  (*Id.* at 32:1-8.)  Plaintiff produced no documents establishing that she visited her therapist on or after July 8, 2011.  (*See* SOF at ¶¶ 20-21; Exhibit K.)

In regards to the July 8 Letter, her only testimony as to emotional damages that she incurred is that "[i]t was very upsetting, to say the least."  (*See* SOF, Exhibit L at 25:14-15.)

- 18 -

Although she later indicates that "it's been totally stressful, totally confusing" and "incapacitating," she does not indicate whether these emotional states occurred at the time of the foreclosure, at the time of the letters she received prior to the July 8 Letter, or at the time of the July 8 Letter or the October 7 Letter. (*See* SOF, Exhibit L at 49:2-14.)

Plaintiff has simply not met the strict standard required to recover actual damages for emotional distress. Plaintiff provides no evidence whatsoever of actual damages caused by the October 7 Letter. (*See* SOF at ¶¶17-27; Exhibits C, J, K and L.) Plaintiff's only evidence of emotional damages related to the October 7 Letter is her own vague statement that receiving the July 8 Letter was "upsetting" and a self-contradictory statement that she visited her therapist after receiving the letter. (*See Id.*) Equally vague and conclusory are Plaintiff's later statements that "it's been totally stressful, totally confusing" and "incapacitating." (*See* SOF, Exhibit L at 49:2-14.) As Plaintiff's testimony is the only actual evidence of her distress and injury, Plaintiff must "reasonably and sufficiently [explain] the circumstances surrounding [her] injury." *Bach,* 149 Fed. Appx. at 361 (internal citations omitted). Plaintiff has utterly failed to do so.

Discovery in this case closed on April 1, 2013. (*See* SOF, Exhibit L.) As Plaintiff cannot prove that either of the letters at issue in this case caused her damages, and she has not provided sufficient evidence of actual damages, she is not entitled to recover actual damages for emotional distress. Accordingly, the Court should grant summary judgment in favor of BANA on Plaintiff's request for actual damages should there be any FDCPA violation found by the Court.

## CONCLUSION

As explained above, no genuine issues of material fact remain for trial and BANA is entitled to summary judgment as a matter of law. The undisputed facts show that Plaintiff's claims are: (1) time barred; (2) not within the purview of the FDCPA; or (3) defeated by BANA's bona fide error defense. Accordingly, Defendant is entitled to summary judgment in its favor on all claims asserted by Plaintiff in this action.

This the 22nd day of April, 2013.

Respectfully submitted,

/s/ Paul Allen England
Lauren Paxton Roberts (BPR No. 25049)
Paul Allen England  (BPR No. 26288)
STITES & HARBISON, PLLC
SunTrust Plaza
401 Commerce Street, Suite 800
Nashville, TN  37219
(615) 782-2200 (phone)
(615) 742-0705 (fax)
*lauren.roberts@stites.com*
*paul.england@stites.com*

Kelli Burns (pro hac vice)
McGuireWoods LLP
201 N. Tryon St.
Suite 3000
Charlotte, NC 28202
Direct Dial: 704-343-2172
Direct Fax: 704-373-8828
*kburns@mcguirewoods.com*
*Counsel for Bank of America, N.A.*

- 20 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 22, 2013, a copy of the foregoing was filed electronically with the Clerk's office by using the CM/ECF system and served electronically and/or via first-class U.S. mail, postage prepaid, upon all counsel as indicated below. Parties may also access this filing through the Court's ECF system.

Patrick Barrett
Barrett Law Office, PLLC
2021 Richard Jones Road, Suite 300
Nashville, Tennessee 37215
pbarrett@barrettlawofficetn.com

Henry Franklin Todd, Jr.
Todd & Spencer Law Firm
404 E. College Street
Dickson, Tennessee 37055
henrytoddjr@bellsouth.net

John R. Ates
Ates Law Firm, P.C.
1800 Diagonal Road
Suite 600
Alexandria, Virginia 22314
j.ates@ateslaw.com

/s/ Paul Allen England
Paul Allen England

- 21 -