**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| INGE GOODSON, | |
| *Plaintiff*, | |
| v. | Case No. 1:12-cv-00065 |
| BANK OF AMERICA, N.A., | |
| *Defendant*. | |

## REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Bank of America, N.A. ("BANA" or "Defendant"), by its undersigned attorney, respectfully submits this Reply in Support of its Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1] BANA states that there are no genuine issues of material fact and BANA is entitled to judgment as a matter of law. In support of the Motion for Summary Judgment, BANA further states as follows:

### ARGUMENT

BANA is entitled to summary judgment in its favor. Plaintiff bases her claim on four letters that she alleges violate the FDCPA. Plaintiff received two of these letters following the foreclosure on the property that occurred on August 3, 2010 and her subsequent refusal to vacate the premises, effectively living as a squatter for nearly three years. (Plaintiff's Response to Defendant's Statement of Undisputed Facts, Doc. 25, at ¶¶ 8-9.) Plaintiff's FDCPA claim is time barred to the extent it is based on the letter dated August 23, 2009 ("August 23 Letter") and the letter dated May 6, 2010 ("May 6 Letter"), and Plaintiff cannot invoke the fraud-based discovery rule, equitable tolling by fraudulent concealment, or the continuing violations doctrine to defeat

---

[1] Concurrent with this Reply, BANA also files a Motion to Strike Exhibits M, O, P, Q, R, and U to Plaintiff's Counterstatement of Facts. In the Motion to Strike, BANA asks the Court to exclude deposition testimony from another proceeding that Plaintiff improperly seeks to use against BANA, as well as documents that have not been admitted into evidence.

the statute of limitations. In addition, BANA is entitled to summary judgment on Plaintiff's claim to the extent it is based on the letter dated July 8, 2011 ("July 8 Letter") and the letter dated October 7, 2011 ("October 7 Letter") because the undisputed facts show that these letters are not debt collection activities and, therefore, are not subject to the FDCPA. Accordingly, the Court should grant summary judgment in favor of BANA.

I.  **PLAINTIFF CANNOT RELY ON THE DISCOVERY RULE, EQUITABLE TOLLING, OR THE DOCTRINE OF CONTINUING VIOLATIONS BECAUSE SHE DID NOT PLEAD HER RELIANCE ON THESE DOCTRINES IN HER COMPLAINT.**

Plaintiff's Complaint gives no indication that Plaintiff intended to rely on the fraud-based discovery rule, equitable tolling by fraudulent concealment, or the continuing violations exception as a theory of recovery. (*See gen.* Compl.) Pleading rules required Plaintiff to affirmatively plead her reliance on these doctrines; however, Plaintiff failed to do so. Allowing Plaintiff to bring these theories for the first time at the summary judgment stage subjects BANA to unfair surprise and violates notice requirements. Accordingly, the Court should find that Plaintiff cannot use these previously unpled theories to save her claim and should grant summary judgment in BANA's favor as to Plaintiff's claim based on the August 23 Letter and the May 6 Letter.

Like the discovery rule and equitable tolling, the continuing violations theory is a specific equitable doctrine that tolls the filing period. *Austion v. City of Clarksville,* 244 F. App'x 639, 647 (6th Cir. 2007). "[W]hen the face of a complaint makes it apparent that the time limit for bringing the claim has expired, plaintiff must affirmatively plead why the violations were not discovered earlier and why the statute should be tolled." *Reid v. Baker*, 499 F. Appx. 520, 524 (6th Cir. 2012) (citing *Auslender v. Energy Mgmt. Corp.,* 832 F.2d 354, 356 (6th Cir. 1987)). In cases of equitable tolling based on fraudulent concealment, the factual allegations underlying the

claim of fraudulent concealment must be pled with particularity. *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 446 (6th Cir. 2012) (internal citations omitted). Once a case reaches the summary judgment stage, the liberal pleading standards are no longer applicable, and a plaintiff may not raise new theories of recovery in response to the opposing party's summary judgment motion. *Tucker v. Union Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005). "To permit a plaintiff to do otherwise would subject defendants to unfair surprise." *Id.*

Here, the Court should not allow Plaintiff effectively to amend her Complaint through her response to BANA's Motion for Summary Judgment and to bring forth theories based on the fraud-based discovery rule, equitable tolling by fraudulent concealment, or the continuing violations doctrine that Plaintiff failed to plead in her Complaint. It is clear that Plaintiff's FDCPA claim is time barred on the face of the Complaint to the extent that it is based on the August 23 Letter or the May 6 Letter. (Compl. ¶¶ 13-15.) Accordingly, Plaintiff was required to affirmatively plead facts showing why her claims were exempt from the statute of limitations. *Reid*, 499 Fed. Appx. at 524. To comply with Rule 11 requirements that claims be nonfrivolous, Plaintiff must have known at the time she filed her complaint that she was relying on some exception to the FDCPA's one-year statute of limitations, yet she failed to plead any exception. Furthermore, Plaintiff had the opportunity to conduct discovery and to amend her complaint as needed to include these theories, but she did not do so.

Plaintiff should not be allowed to amend her Complaint and assert new theories of recovery at the summary judgment stage. "The nature of the notice requirement is more demanding at the summary judgment stage than at earlier stages of the litigation . . . ." *Desparois v. Perrysburg Exempted Vill. Sch. Dist.,* 455 Fed. Appx. 659, 665 (6th Cir. 2012). Plaintiff had ample opportunity to put BANA on notice of her intended reliance on these tolling doctrines and

failed to do so, even though pleading rules required that she affirmatively plead her reliance on these doctrines. As a result, BANA has lost any opportunity to investigate these allegations. Allowing Plaintiff to rely on these theories would violate the notice requirement and subject BANA to unfair surprise. The Court should not allow Plaintiff to rely on the fraud-based discovery rule, equitable tolling by fraudulent concealment, or the continuing violations theory to save her time barred claims. Absent application of these tolling doctrines, Plaintiff's claim is time barred to the extent it is based on the August 23 Letter or the May 6 Letter, and the Court should grant BANA's Motion for Summary Judgment.

## II. THE FRAUD-BASED DISCOVERY RULE, EQUITABLE TOLLING BY FRAUDULENT CONCEALMENT, AND THE CONTINUING VIOLATIONS DOCTRINE DO NOT APPLY TO THE FACTS OF THIS CASE.

Even if the Court considers Plaintiff's arguments regarding the discovery rule, equitable tolling, and the continuing violations doctrine, these arguments fail. The burden is on Plaintiff to show that her claim fits within a recognized exception to the statute of limitations, and Plaintiff fails to meet that burden. BANA is entitled to summary judgment in its favor on Plaintiff's claim based on the August 23 Letter and the May 6 Letter.

"Summary judgment is appropriate if the statute of limitations has run and there is no genuine issue of material fact as to when the plaintiff's cause of action accrued." *Swanson v. Wilson*, 423 Fed. Appx. 587, 592 (6th Cir. 2011). Initially, the defendant carries the burden of showing that the plaintiff's claims are time barred; however, once the defendant meets that burden, the burden shifts to the plaintiff to establish an exception to the statute of limitations, such as equitable tolling or the discovery rule. *Id.*

As explained more fully in BANA's Motion for Summary Judgment, the undisputed facts show that BANA sent and Plaintiff received the August 23 Letter and May 6 Letter more than

one year before Plaintiff filed her Complaint, making any claims based on those letters time barred under the FDCPA's one-year statute of limitations. *See Maloy v. Phillips*, 64 F.3d 607, 608 (11th Cir. Ga. 1995); *Mattson v. U.S. West Commc'ns*, 967 F.2d 259, 261 (8th Cir. 1992). Accordingly, BANA's Motion for Summary Judgment shifted the burden to Plaintiff to establish an exception to the limitations period. Plaintiff has failed to meet this burden, as the legal doctrines that she relies on are inapplicable to the facts of this case. Accordingly, the Court should grant summary judgment in favor of BANA on Plaintiff's FDCPA claim based on the August 23 Letter and the May 6 Letter.

## A. The Fraud-Based Discovery Rule Did Not Delay the Accrual of Limitations Period.

Plaintiff argues that the discovery rule delayed the accrual of the limitations period due to BANA's self-concealing fraud. (Doc. 25 at 6-8.) In support of this argument, Plaintiff relies solely on dicta from a recent Supreme Court case is that wholly inapplicable to the facts of this case. (*See id.* (relying on *Gabelli v. Securities Exchange Commission,* 133 S. Ct. 1216 (2013) (considering the question of whether the government may invoke the fraud-based discovery rule to delay accrual of the statute of limitations in bringing an enforcement action for civil penalties.)). In doing so, Plaintiff conveniently ignores the fact that she has never made fraud allegations in this case. (*See* Compl.) Put simply, Plaintiff has not met her burden of showing that the fraud-based discovery rule applies to this case.

The Sixth Circuit has not determined whether the discovery rule applies in FDCPA cases and has recognized that other circuit courts addressing the issue have reached different conclusions. *See Ruth v. Unifund CCR Partners*, 604 F.3d 908, 914 (6th Cir. 2010) (leaving open the question of whether the FDCPA incorporates a discovery rule) (citing *Mangum v. Action Collection Servs., Inc.,* 575 F.3d 935, 939–41 (9th Cir. 2009) (finding the FDCPA incorporates

Case 1:12-cv-00065   Document 27   Filed 06/05/13   Page 5 of 26 PageID #: 680

both [equitable tolling and the discovery rule]); *Johnson v. Riddle,* 305 F.3d 1107, 1114 n. 3 (10th Cir. 2002) (expressing doubt about whether the FDCPA incorporates a discovery rule)).

The text of the FDCPA does not include a discovery rule. *See* 15 U.S.C. § 1692k(d) ("An action to enforce any liability created by this title may be brought . . . within one year from the date on which the violation occurs."). In cases involving federal statutes, federal common law determines the date on which a statute of limitations begins to run. *See Med. Mut. of Ohio v. k. Amalia Enterprises Inc.,* 548 F.3d 383, 391 (6th Cir. 2008). Although the Supreme Court recognizes that lower federal courts "generally apply a discovery accrual rule when a statute is silent on the issue," the Supreme Court has explicitly noted that it has not adopted this position. *TRW Inc. v. Andrews,* 534 U.S. 19, 27 (2001). Rather, the Supreme Court has recognized a prevailing discovery rule only in cases of fraud, medical malpractice, or latent disease, "where the cry for [such a] rule is loudest." *Id.* Given these statements, it is unlikely that the Supreme Court would find that the FDCPA includes a general discovery rule, and Plaintiff does not dispute this conclusion.

Instead, Plaintiff relies solely on a case examining the fraud-based discovery rule in support of her argument that the discovery rule delay accrual of the statute of limitations in this case. (Doc. 25 at 6-8.) The fraud-based discovery rule applies "where a plaintiff *has been injured by fraud* and 'remains in ignorance of it without any fault or want of diligence or care on his part.'" *Gabelli,* 133 S. Ct. at 1221 (quoting *Holmberg v. Armbrecht,* 327 U.S. 392, 397 (1946) (emphasis added). In these cases, "the bar of the statute does not begin to run until the fraud is discovered." *Id.* The Sixth Circuit, however, imposes "upon the plaintiff a positive duty to use diligence in discovering the existence of a cause of action." *Med. Mut. of Ohio,* 548 F.3d at 391 (quoting *Herm v. Stafford,* 663 F.2d 669, 682 (6th Cir. 1981)). Furthermore, "[i]nformation

sufficient to alert a reasonable person to the possibility of wrongdoing gives rise to a party's *duty to inquire* into the matter with due diligence." *Id.* (quoting *Mich. United Food & Comm'l Workers Union v. the Muir Co.,* 992 F.2d 594, 600 (6th Cir. 1993) (alteration in original)).

Plaintiff has not met her burden of showing that she is entitled to invoke the fraud-based discovery rule. First, Plaintiff has not shown that a general discovery rule is applicable to the FDCPA and instead relies solely on a fraud-based discovery rule. (*See* Doc. 25 at 6-8.) As previously noted, Plaintiff's opposition to summary judgment is the first time that fraud allegations have been made in this case. Regardless, the new allegations that Plaintiff makes are not sufficient to meet Plaintiff's burden of showing that the fraud-based discovery rule applies here. As to the August 23 Letter and the May 10 Letter, Plaintiff's claim is based solely on allegations that these letters misidentified the creditor to whom Plaintiff's debt was owed. (Compl. ¶¶ 13-16.) Plaintiff argues that she learned in October 2011 that no payment had been credited to her loan in association with the foreclosure, that BANA admitted at a deposition in March 2013 that it does not know if it paid value for the property at foreclosure, and that BANA filed affidavits testifying that BANA bought the Property at foreclosure and contends that these allegations show that BANA committed fraud that prevented her from discovering her cause of action. (Doc. 25 at 7.) These arguments, however, are completely irrelevant to Plaintiff's ability to determine whether the creditor listed in the August 23 Letter and May 10 Letter were misidentified, and the Court should disregard them.

The only argument that Plaintiff makes in her Opposition that could potentially support her fraud-based discovery rule argument is the allegation that BANA filed documents in the county land records in July 2010 falsely stating that BANA owned and held the note at issue. (Doc. 25 at 7.) Upon closer examination, however, this allegation is also irrelevant. First,

Plaintiff never establishes that this action, even if it rose to the level of fraud, caused her injury, as is required to invoke the fraud-based discovery rule. *See Gabelli,* 133 S. Ct. at 1221 (the fraud-based discovery rule applies "where a plaintiff has been *injured by fraud* . . . ."). In addition, Plaintiff fails to provide evidence showing that she met her duty to use due diligence to discover her cause of action. *Med. Mut. of Ohio,* 548 F.3d at 391. Plaintiff's claim as to these two letters is based solely on accusations that the letters misidentified the creditor to whom the debt was owed. (Compl. ¶¶ 13-16.) The fact the August 23 Letter identified Ginnie Mae as creditor, while the May 6 Letter identified BACHLS as creditor was enough to put a reasonable person on notice of the possibility that one of the letters could have potentially misidentified the creditor, giving rise to Plaintiff's duty to inquire into the matter. (*See id.*) Plaintiff, however, does not provide evidence showing that she made this required inquiry.

Plaintiff has never claimed that she was *injured by fraud. See Gabelli,* 133 S. Ct. at 1221. Rather, her claim is based on allegations that she was injured by alleged FDCPA violations without any allegations that these violations rise to the level of fraud. (*See* Compl.) As Plaintiff has not provided evidence that BANA committed fraud, has not provided evidence that she met her due diligence duty, and not produced evidence that she was injured by fraud, Plaintiff cannot rely on the fraud-based discovery rule to save her claim. The burden was on Plaintiff to show that her claim fit within the parameters of the discovery rule, and Plaintiff failed to meet that burden. Accordingly, Plaintiff's claim is time barred to the extent that it is based on the August 23 Letter or the May 6 Letter.

### B. Equitable Tolling Did Not Extend the Limitations Period.

Plaintiff next argues that the statute of limitations was tolled because BANA fraudulently concealed facts that supported Plaintiff's cause of action against BANA. (Doc. 26 at 8-9). Once

again, however, Plaintiff falls completely short of meeting her burden to prove that she is entitled to invoke the doctrine of equitable tolling by fraudulent concealment.

The plaintiff bears the burden of proving that she is entitled to equitable tolling. *McClendon v. Sherman,* 329 F.3d 490, 494 (6th Cir. 2003). "Three elements must be pleaded in order to establish fraudulent concealment: (1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts." *Carrier Corp.,* 673 F.3d at 446 (quoting *Dayco Corp. v. Goodyear Tire & Rubber Co.,* 523 F.2d 389, 394 (6th Cir. 1975)). With regard to the "wrongful concealment" element the plaintiff must point to "affirmative acts of concealment." *Hamilton Cnty. Bd. of Comm'rs v. Nat'l Football League,* 491 F.3d 310, 319 (6th Cir.2007). "[M]ere silence or unwillingness to divulge wrongful activities is not sufficient." *Browning v. Levy,* 283 F.3d 761, 770 (6th Cir.2002). Rather, the plaintiff must establish some "trick or contrivance intended to exclude suspicion and prevent inquiry." *Carrier Corp.,* 673 F.3d at 446 (quoting *Pinney Dock & Transp. Co. v. Penn Cent. Corp.,* 838 F.2d 1445, 1467 (6th Cir.), *cert. denied,* 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988).

Furthermore, "[a]ctions such as would deceive a reasonably diligent plaintiff will toll the statute; but those plaintiffs who delay unreasonably in investigating circumstances that should put them on notice will be foreclosed from filing, once the statute has run." *Carrier Corp.,* 673 F.3d at 447 (quoting *Campbell v. Upjohn Co.,* 676 F.2d 1122, 1128 (6th Cir. 1982)). Lastly, only "secret and concealed wrongdoing," not wrongdoing that is "patent or known," operates to toll the statute of limitations. *Ruth v. Unifund CCR Partners,* 604 F.3d 908, 912 (6th Cir. 2010) (internal citations omitted).

Once again, Plaintiff has failed to carry her burden. For equitable tolling to apply, "[Plaintiff] must show that she could not uncover critical information, her 'reasonable investigation notwithstanding.'" *Id.* at 911. Plaintiff has failed to make this showing. Here, Plaintiff presents no evidence and does not even attempt to argue that she made a reasonable investigation into her claims. (*See gen.* Doc. 26.) Instead, Plaintiff relies heavily on the argument that BANA fraudulently concealed the fact that it could not testify that it paid value for the Property at foreclosure. (*Id.* at 8-9). Whether or not BANA paid value for the Property, however, is completely irrelevant to the determination of whether equitable tolling saves Plaintiff's claim based on the August 23 Letter or the May 6 Letter. As previously noted, Plaintiff's claim as to these letters is based entirely on allegations that these letters misidentified the creditor to whom Plaintiff owed her debt. Plaintiff has not shown evidence of any affirmative act of concealment by BANA that prevented her from bringing her claim prior to the expiration of the statute of limitations. Most importantly, Plaintiff has not argued or presented evidence that BANA engaged in any "trick" or "contrivance" or that BANA alleged actions were done with any intent to exclude suspicion and prevent inquiry into Plaintiff's FDCPA claim. *Carrier Corp.,* 673 F.3d at 446. Accordingly, Plaintiff cannot rely on equitable tolling by fraudulent concealment to save her claim, and the Court should grant summary judgment in BANA's favor as to Plaintiff's claim on the August 23 Letter and May 6 Letter.

### C.  **The Continuing Violations Doctrine Does Not Apply to the Facts of This Case.**

Plaintiff next argues that her claims are not barred to the extent they are based on the August 23 Letter and May 6 Letter because the continuing violations doctrine operates to put BANA's entire course of conduct at issue. (Doc. 26 at 9-10.) As a preliminary matter, Plaintiff cannot rely on the continuing violations doctrine because, as established in BANA's Motion for

Summary Judgment, Plaintiff cannot establish that BANA committed an FDCPA violation within the limitations period. *See Wu v. Tyson Foods, Inc.,* 189 Fed. Appx. 375, 378 (6th Cir. 2006) (allowing a plaintiff to invoke the doctrine so long as at least one violation occurred within the limitations period). Furthermore, Plaintiff's description of the continuing violations doctrine is incomplete. A more thorough look at the doctrine as applied in the Sixth Circuit shows clearly that the continuing violations doctrine does not apply to the facts of this case. Accordingly, Plaintiff's claim is time barred to the extent that it is based on actions that took place prior to July 2011.

"For statute-of-limitations purposes, discrete violations of the FDCPA should be analyzed on an individual basis." *Solomon v. HSBC Mortg. Corp. (USA),* No. 09–6293, 2010 WL 3069699, at *3 (10th Cir. Aug. 6, 2010). The continuing violations doctrine is about cumulative violations and is not meant to apply to a series of acts, "each of which is independently actionable, even if those acts form an overall pattern of wrongdoing." *Hill v. Wells Fargo Bank, N.A.,* -- F. Supp. 2d --, 12 C 7240, 2013 WL 2297056, at *6 (N.D. Ill. May 24, 2013) (quoting *Kovacs v. United States,* 614 F.3d 666, 676 (7th Cir. 2010)). Accordingly, courts will bar an FDCPA claim to the extent it that claim is based on letters sent prior to the limitations period but allow the claim to move forward to the extent it is based on actions that occurred within the limitations period. *See, e.g. Arvie v. Dodeka, LLC,* Civ. No. H-09-1076, 2010 WL 4312907, at *11 (S.D. Tex. Oct. 25, 2010).

The Sixth Circuit has indicated that it agrees with this approach. *See Purnell v. Arrow Fin. Servs., LLC,* 303 F. Appx. 297 (6th Cir. 2008). Under the FDCPA statute of limitations, the focus is on "when the violation occurred." *Id.* at 301. The Court further indicated that its decisions regarding the timeliness of Title VII claims under a continuing violation theory would

guide its analysis of the timeliness of claims under the FDCPA. *Id.* at 302. Specifically, the Court noted the holding of the Supreme Court that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* (quoting *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113 (2007)). Although the plaintiff in *Purnell* abandoned all FDCPA claims based on activities that occurred prior to the limitations period, the Court indicated that it would have reached this same result, stating "[t]o the extent that these violations are alleged to have occurred outside the limitations period, they are barred by the statute of limitations. But, to the extent that plaintiff can prove that such violations occurred within the limitations period, they are not time-barred." *Id.* at 302-303. In addition, the Court noted that each violation constituted a separate harm to Plaintiff, and each violation gave Defendant an independent opportunity to comply with the FDCPA. *Id.* at 300.

This approach is consistent with Sixth Circuit case law applying the continuing violations doctrine outside of the FDCPA realm. The Sixth Circuit most commonly applies the doctrine in Title VII cases. *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003) (extending Title VII law on the continuing violations doctrine to the plaintiff's § 1983 claims). In these cases, the Sixth Circuit has held that individual instances of discrimination and retaliatory employment decisions are separately actionable as unlawful employment practices and are therefore not properly tolled under a continuing violation theory. *Id.* "In contrast, hostile environment claims involve unlawful employment practices that cannot be said to occur on any particular day, but occur over a series of days or years." *Id.* (internal citations omitted); *see also Wu v. Tyson Foods, Inc.,* 19 Fed. Appx. 375, 378 (distinguishing hostile work environment claims because they require a victim to demonstrate that the workplace is permeated with discrimination). The Court went on to find that *Morgan* overturned prior Sixth Circuit law that allowed serial, related violations to

form the basis of a continuing violation exception. *Id.* at 268. Accordingly, in the Sixth Circuit, "plaintiffs are now precluded from establishing a continuing violation exception by proof that the alleged acts of discrimination occurring prior to the limitations period are sufficiently related to those occurring within the limitations period." *Id.*

The *Joseph* and *Tarrant* cases on which Plaintiff relies are cases involving FDCPA violations more akin to a hostile work environment claim than to the discrete violations present in this case. The first case on which Plaintiff relies, *Joseph v. J.J. Mac Intyre Companies, L.L.C.*, applied the FDCPA to a persistent pattern of repeated phone calls, including automated phone calls. *Joseph,* 281 F. Supp. 2d 1156, 1161 (N.D. Cal 2003). In deciding that the case fell within the continuing violations doctrine, the court relied on the fact that approximately seventy-five phone calls had been made within the limitations period and the fact that "no substantial period of cessation" had occurred during the limitations period. *Id.* Similarly, Judge Trauger relied on a pattern of repeated phone calls in applying the continuing violation doctrine to an FDCPA case, finding that these repeated phone calls were not discrete acts because they "cannot be said to occur on any particular day." *Tarrant v. Northland Grp., Inc.,* 3:10-CV-1204, 2012 WL 140431, at *9 n.8 (M.D. Tenn. Jan. 18, 2012). The third case on which Plaintiff relies is not binding on this Court, and its holding is in direct conflict with Sixth Circuit precedent as outlined above. *See Padilla v. Payco Gen. Am. Credits, Inc.,* 161 F. Supp. 2d 264, 273 (S.D.N.Y. 2001).

Here, in contrast, the continuing violations doctrine does not apply because each letter upon which Plaintiff bases her claim was a discrete act. Plaintiff's argument that a single act within the limitations period allows recovery for all acts relating to the same debt collection efforts, regardless of how long ago those alleged violations occurred, is not convincing. *See Sharpe,* 319 F.3d at 267 (overturning precedent that applied the continuing violations doctrine to

related violations); *Arvie,* 2010 WL 4312907 at *10. Additionally, assuming *arguendo* that the letters at issue in this case constituted FDCPA violations, each letter was a separately actionable violation, and therefore a discrete act. *See Hill*, 2013 WL 2297056, at *6. BANA proved in its Motion for Summary Judgment that the date of each letter can be readily ascertained, further indicating that the letters were discrete acts. *See Tarrant,* 2012 WL 140431 at *9 n.8. Lastly, Plaintiff's claim in no way dependent on more than one instance of unlawful conduct as a hostile work environment claim is. Plaintiff's arguments that the violations are related and form a pattern of wrongdoing are simply not enough to bring the violations into the realm of a continuing violation. (Doc. 26 at 9.)

BANA successfully proved in its Motion for Summary Judgment that Plaintiff's FDCPA claim is time barred to the extent that it is based on the August 23 Letter or May 6 Letter. The August 23 Letter was mailed on August 23, 2009, and Plaintiff remembers receiving that letter. (SOF ¶ 5; Compl. ¶ 13; Ex. D to SOF; Ex. L to SOF at 23:21-25.) Accordingly, Plaintiff must have filed any FDCPA claims based on that letter by August 23, 2010. Similarly, Defendant mailed the May 6 Letter on May 6, 2010, and Plaintiff received that letter on May 10, 2010. (SOF ¶ 6; Compl. ¶ 15; Ex. E to SOF.) Plaintiff would have had to file any FDCPA claims based on that letter by May 6, 2011. As Plaintiff did not file the Complaint until July 6, 2012, her claim is time barred to the extent that it is based on the August 23 Letter or May 6 Letter. (*See* SOF ¶¶ 5-6; Ex. D to SOF; Ex. E to SOF.) As a result, the burden shifted to Plaintiff to prove that an exception to the statute of limitations applies to her claims. As Plaintiff has failed to meet this burden, the Court should find that Plaintiff's claim is time barred as to any actions that occurred before July 2011 and grant summary judgment in its favor on Plaintiff's claim as to the August 23 Letter and the May 6 Letter.

### III. BANA IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S REMAINING FDCPA CLAIM.

As no genuine issue of material fact exists as to Plaintiff's claim based on the remaining two letters (July 8 Letter and October 7 Letter), BANA is entitled to summary judgment in its favor as to those letters as well. BANA's Motion for Summary Judgment established that the undisputed facts show that these letters were merely informational communications, not debt collection activities, and are therefore not subject to the FDCPA. Plaintiff's Opposition fails to present evidence demonstrating a genuine issue of material fact as to this issue. Accordingly, the Court should enter summary judgment in favor of BANA.

To be liable under the FDCPA, "a debt collector's targeted conduct must have been taken 'in connection with the collection of any debt' or in order 'to collect any debt.'" *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 459-60 (6th Cir. 2013) (internal citations omitted). "[I]t is clear that "the statute does not apply to *every* communication between a debt collector and a debtor." *Grden v. Leiken Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011) (quoting *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 385 (7th Cir. 2010) (emphasis in original)). Courts have recognized that no bright-line rule exists to determine whether a communication is "debt collection activity." *Gburek.* 614 F.3d at 384. For a communication to fall under the FDCPA, however, "an animating purpose of the communication must be to induce payment by the debtor." *Grden*, 643 F.3d at 173. Ultimately, the goal of the Court is to determine whether the true purpose of the communication is to collect debt. *See Maynard v. Cannon*, 401 F. App'x 389, 395 (10th Cir. 2010).

Accordingly, in making this determination, courts weigh a variety of factors, including whether the communication included an explicit demand for payment. *Grden*, 643 F.3d at 173. Courts will also consider whether the loan is in default. *Gburek*, 614 F.3d at 385. Further, courts

consider whether any payment dates listed in the communication are prospective, simply warning the debtor of the consequences of missing a future payment. *Bailey v. Sec. Nat'l Servicing Corp.,* 154 F.3d 384, 389 (7th Cir. 1998). "The nature of the parties' relationship is also relevant." *Gburek*, 614 F.3d at 385. Lastly, communications that "merely inform" the debtor of the current status of a debt are not debt collection activities. *Bailey*, 154 F.3d at 38-89; *Grden*, 643 F.3d at 173.

### A.  The July 8 Letter.

As explained further in BANA's Motion for Summary Judgment, the undisputed evidence shows that the July 8 Letter was not sent in connection with an attempt to collect debt. Rather, the text of the July 8 Letter makes clear that the purpose of the letter was merely to inform borrowers of a change in their loan servicer. The notice enclosed with this letter simply informs Plaintiff of the amount of the debt. (Ex. F to SOF at 3.) Nowhere in the "Important Message" section, or elsewhere in the letter or notice, does BANA make a demand for payment. (*See generally id.*) It stands to reason that if the purpose of the letter was to induce payment, the "Important Message" section of the letter would at least request payment. The letter neither indicates a due date for a past or future payment nor indicates that any negative consequences will befall Plaintiff if she fails to make a payment. (*See id.*)

In her Opposition, Plaintiff provides no evidence that establishes a genuine issue of material fact as to whether the July 8 Letter is subject to the FDCPA. First, Plaintiff relies on the argument that BANA must have believed the July 8 Letter was subject to the FDCPA since BANA responded to Plaintiff's request for verification. (Doc. 26 at 11-15.) Plaintiff fails to establish, however, how BANA's subjective belief has any effect on the FDCPA analysis. *See Gburek*, 614 F.3d at 385 (stating that the standard for determining whether a communication is

debt collective activity is an objective one). Further, Plaintiff argues that the FDCPA notice included with the July 8 Letter is definitive proof that the letter was subject to the FDCPA but cites no law in support of her argument, perhaps because the law holds otherwise. *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 399 (6th Cir. 1998) ("[T]he mere fact that the letter states at the bottom that it 'is an attempt to collect a debt' does not transform the letter into an unlawful demand for payment."); *see also Maynard*, 401 F. Appx. 389 at 395 ("The inclusion of the FDCPA notice is legally irrelevant" to the determination of whether a communication is a debt collection activity.).

As shown in BANA's Motion for Summary Judgment, the evidence shows that the July 8 Letter was not a "debt collection activity" and, therefore, not subject to the FDCPA. Plaintiff has failed to produce evidence on summary judgment establishing a general issue of material fact as to this issue. Thus, the Court should grant summary judgment in favor of BANA on Plaintiff's claim to the extent that it arises from the July 8 Letter.

**B. The October 7 Letter.**

Similarly, the purpose of the October 7 Letter was merely to respond to and inform Plaintiff of the validity of the debt; the purpose of the letter was not to collect a debt. In fact, the letter explicitly states that it is for "the sole purpose of responding to [Plaintiff's] correspondence dated July 8, 2011" in which she disputed the validity of the debt. (Ex. I to SOF at 1.) Additionally, the letter does not make any demand for payment on the loan, and it does not include any past or future payment due dates. (*See* Ex. I to SOF.) *Grden*, 643 F.3d at 173; *Bailey*, 154 F.3d at 389. Plaintiff had no previous relationship with the law firm that sent the October 7 Letter that would indicate that it was related to foreclosure on her home. *See Gburek*, 614 F.3d at 385.

The purpose of the October 7 Letter was simply to inform Plaintiff of the status of her debt per her own request. *See Grden*, 643 F.3d at 173 ("[T]he decisive point is that [the defendant] made the balance statements only after [the plaintiff] called and asked for them.") All that the letter does is reference the Note and Deed of Trust as evidence of Plaintiff's debt, as well as supply the name of the owner and servicer of the loan. (*See* Ex. I to SOF.) The letter also supplies a payment history on the loan and outlines fees previously charged to the account that are not reflected in the payment history. (*See id*.) Plaintiff seems to believe that the inclusion of the payment history is definitive proof that the October 7 Letter falls within the scope of the FDCPA, but Plaintiff fails to note that she explicitly requested that BANA send her a payment history in the letter she sent to BANA disputing her debt. (*See* Ex. H to SOF.)

Viewing the letter and the evidence objectively, it is clear that the October 7 letter does not demand a payment and does not indicate that the payoff statement will demand payment. (*See* Ex. I to SOF.) In fact, Plaintiff's belief is objectively unreasonable in light of the additional statement in the October 7 Letter that the payment demand statement "will show all amounts necessary to pay off the Loan" but does not mention that the statement will include any payment due dates or require Plaintiff to make a payment. (*Id*.) The October 7 Letter was "merely a ministerial response to a debtor inquiry, rather than part of a strategy to make payment more likely," and therefore not a "debt collection activity" subject to FDCPA. *Grden*, 643 F.3d at 173.

BANA's evidence in support of its Motion for Summary Judgment shows that Plaintiff cannot establish that the letters at issue in this case were "debt collection activities" subject to the FDCPA. In opposition, Plaintiff has failed to produce evidence showing that a genuine issue of material fact exists as to this issue. Viewed objectively, the record establishes only that the July 8 Letter and the October 7 Letter were informational communications regarding the status of

Plaintiff's debt. Courts have routinely found that these types of communications are not "communications made in connection with the collection of debt" and fall outside of the purview of the FDCPA. Accordingly, no genuine issue of material fact exists as to whether these letters are "debt collection activities" subject to the FDCPA. The Court should enter summary judgment in favor of BANA.

## IV. PLAINTIFF STILL FAILS TO PRODUCE EVIDENCE OF ACTUAL DAMAGES.

Plaintiff still fails to produce sufficient evidence of emotion harm damages and accordingly is not entitled to present those damages to a jury. As a preliminary note, Plaintiff cannot rely on her claim for attorneys' fees or her allegation that she has lost equity in her home as a basis for actual damages. Under the FDCPA, attorneys' fees[2] are not part of an actual damages award but are awarded separately from any actual damages suffered. *See Lee v. Thomas & Thomas,* 109 F.3d 302, 302 (6th Cir. 1997) (affirming award of attorney fees when the district court found the plaintiff suffered no actual damages). Furthermore, Plaintiff has provided no evidence of loss of equity in her home and has not even attempted to explain how any alleged FDCPA violation by BANA could have possibly caused her to lose equity in her home when she fully admits that she has not made any payments on the loan since March 2009, months prior to any of the alleged FDCPA violations. (Plaintiff's Response to Defendant's Statement of Undisputed Facts, Doc. 25, ¶ 9.) Even though the property was sold at foreclosure on August 3, 2010, Plaintiff has refused to vacate the premises since that time, effectively living as a squatter for nearly three years.

In response to BANA's argument that Plaintiff cannot recover actual damages, Plaintiff ignores case law imposing a strict standard for emotional harm damages. Furthermore, the crux

---

[2] At this point, BANA contests that Plaintiff is entitled to attorneys' fees. Nevertheless, if the Court were to award Plaintiff attorneys' fees, those fees would not be considered part of an actual damages award.

of Plaintiff's argument seems to be that they are entitled to present evidence of actual damages to a jury. (*See* Reponses to Defendant's Statement of Undisputed Facts, Doc. 25, ¶¶ 17-19.) Plaintiff cannot, however, present evidence of emotional harm to a jury that it has not produced during discovery. *See Lewis,* 135 F.3d at 404 (rejecting the plaintiff's argument that it was error for the district court to preclude evidence of emotional harm damages). In essence, summary judgment gives the moving party the opportunity to "challenge the opposing party to 'put up or shut up' on a critical issue." *BDT Products, Inc. v. Lexmark Intern, Inc.,* 124 Fed. Appx. 329, 331 (6th Cir. 2005). Accordingly, to survive summary judgment, Plaintiff must produce evidence showing more than the "mere possibility" of a factual dispute. *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986); *see also Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). As Plaintiff has failed to meet this burden, she is not entitled to present evidence of emotional harm damages to a jury.

Although the Sixth Circuit has not explicitly determined the level of evidence required to prove emotional damages under the FDCPA, district courts within the Sixth Circuit have applied the evidentiary standard for plaintiffs seeking emotional damages under the Fair Credit Reporting Act (FCRA), a similar statute. *See, e.g., Hoffman v. GC Servs. Ltd. P'ship*, 3:08-CV-255, 2010 WL 9113645, at *19 (E.D. Tenn. Mar. 3, 2010); *Kaplan v. Experian, Inc.*, No. 09-10047, 2010 WL 2163824, at *8 (E.D. Mich. May 26, 2010). First and foremost, to recover actual damages, a plaintiff must show that a violation of the statute caused the plaintiff harm. *Bach v. First Union Nat'l Bank,* 149 Fed. Appx. 354, 360–61 (6th Cir. 2005). A plaintiff seeking emotional damages under the FDCPA must provide "actual evidence of distress and injury, not merely conclusory statements." *Hoffman*, 2010 WL 9113645, at *19. Although the injured person's testimony alone may suffice to establish damages for emotional distress, the testimony

must "reasonably and sufficiently [explain] the circumstances surrounding the injury" and must "not rely on mere conclusory statements." *Bach,* 149 Fed. Appx. at 361 (citing *United States v. Balistrieri,* 981 F.2d 916, 931-32 (7th Cir. 1992)). Courts maintain a strict standard for a finding of emotional damages "because they are so easy to manufacture." *Sarver v. Experian Info. Solutions*, 390 F.3d 969, 971 (7th Cir. 2004) (quoting *Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 880 (7th Cir. 2001)).

The Sixth Circuit approved of this approach in the *Lewis* case. In *Lewis,* the plaintiff brought claims under both the FDCPA and an Ohio state statute. *Lewis,* 135 F.3d 389 at 403. The plaintiff argued on appeal that the district court erred in granting judgment as a matter of law on the Ohio state law claims because he had not been given the opportunity to present evidence of actual damages. *Id.* The Sixth Circuit, however, upheld the district court's ruling and in doing so implicitly approved the district court's decision to exclude claims relating to an alleged FDCPA letter because the plaintiff had failed to prove damages proximately caused by the letter. *Id.* at 404 ("[T]he district court did not exclude the claims relating to [the letter] . . . simply because the statute of limitations under the FDCPA had run. Rather, the court found that [plaintiff] had proved no damages proximately caused by [the letter]."). The Sixth Circuit went on to quote and implicitly approve the reasoning of the district court:

> Mr. Lewis's attempts to prove actual damages also failed under both statutes. He did not attempt to prove any "economic" damages. Rather, he asserted he suffered mental distress resulting in headaches, indigestion, and fitful sleep throughout the period of ACB's attempted collection and continuing up to the time of trial. He offered no medical evidence and admitted that he had not seen a physician for any of the claimed ills, but had self-medicated with aspirin and Tums. The debt involved here is over $14,000. During 1994 Mr. Lewis admittedly had somewhere in the vicinity of $50,000 unpaid credit card debt outstanding. He had extensive negotiations with Amex over this particular debt and became involved in at least three lawsuits relating just to this debt. Even assuming that the efforts of ACB to collect the debt added to his distress, he offered no competent testimony linking his distress to those parts of ACB's efforts which he challenged as unlawful, as

compared to, for example, his admitted upset that the case had been referred to a collection agency at all despite his ongoing conversations with Amex. Mr. Lewis could not remember either at deposition or trial, any details of any correspondence he received from ACB, yet his trial position was that the FDCPA violations were in the details. Mr. Lewis had so little recollection of the July 8, 1994, telephone call, which lasted less than a minute, that he had remembered it as coming from a woman at 8:00 a.m. on a Sunday, whereas the proof showed that it occurred around 10:30 a.m on a Friday and the caller was male. This is not an adequate factual basis for an award of mental distress damages.

*Id.* (internal citations omitted). Accordingly, it is appropriate under Sixth Circuit precedent for this Court to preclude Plaintiff from presenting evidence of emotional harm damages to a jury when she has failed to present adequate evidence of that harm on summary judgment.

Plaintiff has not provided sufficient evidence that the July 8 Letter or October 7 Letter caused her emotional harm. Although Plaintiff contends that she produced evidence of these damages during discovery, she fails to adequately address BANA's argument that the evidence produced was insufficient under the strict standard for emotional harm damages. Furthermore, Plaintiff fails to produce any additional, competent evidence in support of her claim. Instead, Plaintiff attempts to rely on testimony that she gave at a deposition in a case wholly separate from the one before the Court as evidence of these damages.

Plaintiff does not dispute that she had panic attacks, left her job, stopped seeing Dr. Champion, and stopped taking her prescription medication *before* she received either of the only two letters relevant to this case. (Plaintiff's Response to Defendant's Statement of Undisputed Facts, Doc. 25, ¶¶ 22-26.) Furthermore, her deposition testimony indicates that the foreclosure sale and not any letters that she received from BANA prompted her to begin seeing a therapist and quit her job. (*See* Ex. L to Doc. 22 at 13:7-12; 49:11-14.) In addition, Plaintiff cannot recover actual damages caused by either of the first two letters, as any claims based on those letters are time barred. Accordingly, the Court should disregard any evidence of damages that

occurred prior to July 2011, as the July 8 Letter and October 7 Letter could not have caused those damages.

Although Plaintiff disputes BANA's contention that she has produced no documents as evidence of any actual damages that she incurred after July 8, 2011, Plaintiff cites to no evidence in support of her dispute and does not file as exhibits to her Counterstatement of Facts any documents that she alleges she provided. (Plaintiff's Response to Defendant's Statement of Undisputed Facts, Doc. 25, ¶¶ 21.) The only evidence on the record in this case that Plaintiff has provided of actual damages after July 2011 is her self-contradictory testimony that she scheduled an appointment with her therapist in July 2011. (Ex. L to Doc. 22 at 31:3-13.) On summary judgment, Plaintiff provides no additional information indicating whether this appointment actually occurred. Even if Plaintiff did visit her therapist after July 2011, she cannot establish that the July 8 Letter, and not the foreclosure or earlier letters, caused that visit, especially when her testimony indicates that any visit that occurred was the last in a series of visits dating back to the foreclosure of the property, which occurred on August 3, 2010. (Ex. L to Doc. 22 at 13:7-12.) In addition, on July 13, 2011, only five days after Plaintiff received the July 8 Letter, BANA sent Plaintiff a second letter informing Plaintiff that the July 8 Letter was sent in error and asking Plaintiff to disregard it, and Plaintiff does not dispute that she received this letter. (Plaintiff's Response to Defendant's Statement of Undisputed Facts, Doc. 25, ¶ 12.) As a result, she cannot reasonably attribute any mental distress that she experienced more than a few days after receipt of the July 8 Letter to that letter. Plaintiff has provided no evidence of actual damages that she incurred after October 7, 2011. (*See* Doc. 22 ¶¶ 17-27; Exs. J-L to Doc. 22.) Accordingly, Plaintiff cannot prove that the July 8 Letter or the October 7 Letter caused her actual damages.

Even if the Court finds that Plaintiff has sufficiently shown that the July 8 Letter caused Plaintiff actual damages, Plaintiff is still not entitled to present evidence of these damages to a jury because she has not provided sufficient evidence of these damages under the strict standard governing emotional harm damages. The only evidence that Plaintiff provides of actual damages after July 2011 is her contradictory testimony that she scheduled an appointment with her therapist in July 2011. Plaintiff produced no documents establishing that she visited her therapist on or after July 8, 2011. (Doc. 22 ¶¶ 20-21; s*ee* Ex. K to Doc. 22.)

In regards to the July 8 Letter, Plaintiff's only testimony as to emotional damages that she incurred is that "[i]t was very upsetting, to say the least." (Ex. L to Doc. 22 at 25:14-15.) Although she later indicates that "it's been totally stressful, totally confusing" and "incapacitating," she does not indicate whether these emotional states occurred at the time of the foreclosure, at the time of the letters she received prior to the July 8 Letter, or at the time of the July 8 Letter or the October 7 Letter. (Ex. L to Doc. 22 at 49:2-14.)

Plaintiff has simply not met the strict standard required to recover actual damages for emotional distress. Plaintiff's only evidence of emotional damages related after July 2011 is her self-serving, vague statement that receiving the July 8 Letter was "upsetting" and a self-contradictory statement that she visited her therapist after receiving the letter. (*See* Doc. 22 ¶¶ 17-27; Exs. C, J-L to Doc. 22.) Equally vague and conclusory are Plaintiff's later statements that "it's been totally stressful, totally confusing" and "incapacitating." (Ex. L to Doc. 22 at 49:2-14.) As Plaintiff's testimony is the only actual evidence of her distress and injury, Plaintiff must "reasonably and sufficiently [explain] the circumstances surrounding [her] injury." *Bach,* 149 Fed. Appx. at 361 (internal citations omitted). Plaintiff has utterly failed to do so.

Discovery in this case closed on April 1, 2013. As Plaintiff cannot prove that either of the letters at issue in this case caused her damages, and she has not provided sufficient evidence of actual damages, she is not entitled to recover actual damages for emotional distress. Accordingly, the Court should grant summary judgment in favor of BANA on Plaintiff's request for actual damages should there be any FDCPA violation found by the Court.

## CONCLUSION

As explained above, no genuine issues of material fact remain for trial and each of the BANA is entitled to summary judgment as a matter of law. The undisputed facts show that Plaintiff's claims are: (1) time barred or (2) not within the purview of the FDCPA. Accordingly, Defendant is entitled to summary judgment in its favor on all claims asserted by Plaintiff in this action.

This the 5th day of June, 2013.                    Respectfully submitted,

_____
Lauren Paxton Roberts
Paul Allen England
STITES & HARBISON, PLLC
401 Commerce Street, Suite 800
Nashville, Tennessee 37219
(615) 782-2200 (phone)
(615) 742-0705 (fax)
*lauren.roberts@stites.com*
*paul.england@stites.com*

Kelli Burns (pro hac vice)
McGuireWoods LLP
201 N. Tryon St.
Suite 3000
Charlotte, NC 28202
Direct Dial: 704-343-2172
Direct Fax: 704-373-8828
*kburns@mcguirewoods.com*
*Counsel for Bank of America, N.A.*

Case 1:12-cv-00065   Document 27   Filed 06/05/13   Page 25 of 26 PageID #: 700

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 5, 2013, that a true and correct copy of the foregoing was filed electronically with the Clerk's office by using the CM/ECF system and served electronically and/or via first-class U.S. mail, postage prepaid, as indicated below.

Patrick Barrett
Barrett Law Office, PLLC
2021 Richard Jones Road, Suite 300
Nashville, Tennessee 37215
pbarrett@barrettlawofficetn.com

Henry Franklin Todd, Jr.
Todd & Spencer Law Firm
404 E. College Street
Dickson, Tennessee 37055
henrytoddjr@bellsouth.net

John R. Ates
Ates Law Firm, P.C.
1800 Diagonal Road
Suite 600
Alexandria, Virginia 22314
j.ates@ateslaw.com

*Attorneys for Plaintiff*

/s/ Paul Allen England
Paul Allen England