UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| INGE GOODSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:12-00065 |
| | ) | Judge Sharp |
| BANK OF AMERICA, N.A. | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Four letters serve as the basis for Plaintiff Inge Goodson's claims under the Fair Debt Collection Practices Act (FDCPA). Because the statute of limitations had run on two of the letters by the time suit was filed, and because the other two letters do not violate the FDCPA, Defendant Bank America, N.A.'s (BANA's) Motion for summary judgment will be granted.

**I.**

The FDCPA provides, in part:

> An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs.

15 U.S.C. § 1692k(d). "The general rule is that [a court] will not extend the statute of limitations 'by even a single day.'" Ruth v. Unifund CCR Partners, 604 F.3d 908, 910 (6th Cir. 2010) (citation omitted).

It appears that the United States Court of Appeals for the Sixth Circuit has not addressed what triggers the running of the FDCPA statute of limitations. However, at least two other circuits have identified the date of mailing of the letter as the trigger point.

1

The Eighth Circuit so held in Mattson v. U.S. West Communication Inc., 967 F.2d 259, 261 (8th Cir. 1992), reasoning that while "Congress' ultimate objective" in enacting the FDCPA "was to protect consumers from harassment by debt collectors, Congress intended to achieve this purpose by regulating the conduct of debt collectors." Once a creditor "place[s] the letters in the mail, its conduct with respect to any violation of the FDCPA is complete," and the date of mailing the letters is "its last opportunity to comply with the FDCPA[.]" Id. The court also agreed with the district court's conclusion "that the date of mailing is a date which may be 'fixed by objective and visible standards,' one which is easy to determine, ascertainable by both parties, and may be easily applied." Id. In Maloy v. Phillips, 64 F.3d 607, 608 (11th Cir. 1995), the Eleventh Circuit found the "reasoning of the Eighth Circuit persuasive and adopt[ed] the approach . . . save for the calculation of the days from the mailing of the collection letter." In its view, Rule 6(a) of the Federal Rules of Civil Procedure required that the operative start date is the day after mailing, giving the prospective plaintiff an extra day within which to file suit.

Given those cases, and the fact that Mattson's "bright line rule approach" was cited with approval by the Sixth Circuit in the context of an FDCPA claim based upon a collection complaint, Tyler v. DH Capital Management, Inc., 736 F.3d 455, 465(6th Cir. 2013),[1] the court finds that the first two letters are untimely. The Complaint in this action was filed on July 6, 2012. The first letter was mailed on August 23, 2009, and the second letter was mailed on May 6, 2010.

## II.

---

[1] In Tyler, the Sixth Circuit held that an FDCPA cause of action based upon a collection complaint accrues when the complaint is filed, rather than when the debtor is served.

2

Plaintiff argues the one year limitations period should be extended based upon the discovery rule, equitable tolling, and/or the continuing violation doctrine. None of her arguments are persuasive.

**A.**

The text of the FDCPA does not include a discovery rule. Although lower courts "'generally apply [a] discovery accrual rule when [the] statute does not call for a different rule,'" the Supreme Court has "not adopted that position" and has "recognized a prevailing discovery rule" only "'where the cry for [such a] rule is loudest.'" TRW Inc. v. Andrews, 534 U.S. 19, 27 (2001) (quoting Urie v. Thompson, 337 U.S. 163, 170 (1949)). In Ruth, the Sixth Circuit specifically declined to decide "whether the FDCPA incorporates a discovery rule or permits equitable tolling." 604 F.3d at 914.

Recognizing as much, Plaintiff relies upon Gabelli v. Securities and Exchange Commission, 133 S. Ct. 1216 (2013), as support for application of the discovery rule, but even she recognizes that the case dealt with whether the government in its role as enforcer of a civil penalty could invoke the rule. Moreover, the language she quotes from Gabelli suggests the inapplicability of the rule because the Supreme Court was discussing the running of the statute of limitations on a fraud claim, specifically stating that "'where a plaintiff has been injured by fraud and remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered." Id. at 1221 (citation omitted).

Plaintiff claims that while her home loan was in default in 2009 and she was in the process of attempting to obtain a modified loan, the loan was sold by Taylor Bean and Whitaker Mortgage Corporation and included in a mortgage-backed security via the Government National Mortgage Association, or "Ginnie Mae." The August 23, 2009 letter, sent by BAC Home Loans Servicing

3

(which later merged into BANA), indicated that it was servicing the loan and that Ginnie Mae was the creditor on the loan. The May 6, 2010 letter, sent by the law firm of Shapiro and Kirsch, LLP (itself the subject of a separate lawsuit before the Court, <u>Goodson v. Shapiro & Kirsch</u>, No. 1:11-00031), indicated that the firm had been retained to initiate foreclosure proceedings on the mortgage debt then owed to BAC Home Loans. Both letters allegedly contained false statements because the Federal Reserve Bank of New York was the holder of the mortgage-backed security that included Plaintiff's loan and "was the entity to whom Goodson's debt was owed through July 2010." (Pf's Counter-Statement of Facts, Docket No. 25 ¶ 6).

Plaintiff's Complaint is in one count and alleges only violations of the FDCPA. She does not allege fraud, nor did "she affirmatively plead with particularity: '(1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of h[er] cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts.'" <u>Reid v. Baker</u>, 499 F. App'x 520, 527 (6th Cir. 2012) (applying Tennessee law) (citations omitted); <u>see</u> <u>also</u>, <u>Fritz v. Resurgent Capital Services, LP</u>, 955 F. Supp.2d 163, 172 (E.D.N.Y. 2013) (assuming the discovery rule applies in FDCPA cases, plaintiff must still exercise due diligence).

Moreover, and leaving aside that the two letters identified different creditors, which would put a reasonable person on notice of the possibility that one of the letters may have misidentified the creditor, Plaintiff does not claim that she was injured by fraud, <u>Gabelli</u>, 133 S.Ct. at 1221; instead, her claim is based on allegations that she was injured by FDCPA violations. Given Plaintiff's allegations, the Court will not apply a discovery rule to extend the statute of limitations.

**B.**

For much the same reason, the Court finds equitable tolling inappropriate. "[T]he propriety of equitable tolling is determined on a case-by-case basis and is to be narrowly applied." Egerer v. Woodland Realty, Inc., 556 F.3d 415, 424 (6th Cir. 2009). "Parties who rely on equitable tolling through fraudulent concealment have the burden of demonstrating its applicability." Hill v. U.S. Dep't. of Labor, 65 F.3d 1331, 1336 (6th Cir. 1995).

To establish fraudulent concealment, plaintiff must plead and prove that "1) the defendant concealed the underlying conduct, 2) the plaintiff was prevented from discovering the cause of action by that concealment, and 3) the plaintiff exercised due diligence to discover the cause of action." Huntsman v. Perry Local Schools Bd. of Educ. 379 F. App'x 456, 461 (6th Cir. 2010). The Sixth Circuit has elaborated:

> A plaintiff must plead the factual allegations underlying a claim of fraudulent concealment with particularity. Friedman v. Estate of Presser, 929 F.2d 1151, 1160 (6th Cir. 1991). With regard to the "wrongful concealment" element the plaintiff must point to "affirmative acts of concealment." Hamilton Cnty. Bd. of Comm'rs v. Nat'l Football League, 491 F.3d 310, 319 (6th Cir. 2007). "[M]ere silence or unwillingness to divulge wrongful activities is not sufficient." Browning v. Levy, 283 F.3d 761, 770 (6th Cir. 2002). Instead, there must be some "'trick or contrivance intended to exclude suspicion and prevent inquiry.'" Pinney Dock & Transp. Co. v. Penn Cent. Corp., 838 F.2d 1445, 1467 (6th Cir.), cert. denied, 488 U.S. 880, 109 S. Ct. 196, 102 L.Ed.2d 166 (1988) (quoting Wood v. Carpenter, 101 U.S. (11 Otto) 135, 143, 25 L.Ed. 807 (1879)).

Carrier Corp. v. Outokumpu Oyj, 673 F.3d 430, 446-47 (6th Cir. 2012).

Plaintiff does not plead a claim of fraud, let alone allegations of fraudulent concealment with particularity. In response to the Motion for Summary Judgment, Plaintiff argues that BANA continued its foreclosure suit to evict her from her home even though it knew it could not testify that "it paid anything of value for Goodson's home despite its prior affidavit stating otherwise." (Docket No. 26 at 8). She also argues that "[i]t was only through compelled testimony in this case that

5

BANA finally spilled the beans that what it said under oath in the state court proceeding was not true and that it could not testify that it purchased or paid anything of value for Goodson's home at the foreclosure and that it did not own Goodson's note." Id. at 8-9.

Accepting all of that as true for purposes of summary judgment, whether BANA paid value for the property or whether it stated an untruth in the state-court proceedings is wholly irrelevant to the determination of whether the letters misidentified the creditor to whom the debt was owed. The basis for her FDCPA claim is that the August 23, 2009 and May 6, 2010 letters were misleading, not that BANA made have made misrepresentations to the state court in the foreclosure proceedings. Such alleged conduct did not prevent Plaintiff from discovering her FDCPA cause of action. Moreover, she has not argued or presented any evidence that BANA engaged in any "'trick or contrivance intended to exclude suspicion and prevent inquiry" with regard to her FDCPA claims.

### C.

Nor does the continuing-violation doctrine properly bring the first two letters before the Court. In Schaffhauser v. Citibank (S.D.) N.A., the Third Circuit observed that it was unaware of any support for the "contention that participation in ongoing debt collection litigation qualifies as a 'continuing violation' of the FDCPA," and noted that "the only circuit court decision addressing this issue has concluded precisely the opposite." 340 F. App'x 128, 131 (3rd Cir. 2009) (citing Naas v. Stolman, 130 F.3d 892, 893 (9th Cir. 1997)). The court went on to note that "[g]enerally, our decisions have limited the continuing violation doctrine to the employment discrimination context." Id.

For its part, the Sixth Circuit has not addressed the precise issue before the Court. However, in an unpublished opinion it has indicated that the decisions regarding the timeliness of Title VII

6

claims under a continuing-violation theory guide the analysis for the timeliness of FDCPA claims and, specifically, that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." Purnell v. Arrow Financial Services, LLC, 303 F. App'x 297, 302 (6th Cir. 2008) (quoting, Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002)).

That said, there are some district court opinions which support the application of a continuing-violation theory. Plaintiff relies on three: Joseph v. J.J. MacIntyre Co., 281 F. Supp.2d 1156 (N.D. Cal. 2003), Tarrant v. Northland Group, Inc., 2012 WL 140431 (M.D. Tenn. Jan. 18, 2012), and Padilla v. Payco General American Credits, Inc., 161 F. Supp. 2d 264 (S.D.N.Y. 2001).

Padilla is of limited persuasive value because the court did not analyze the issue, other than to say that "the statute of limitations is not intended to deprive plaintiffs of the use of evidence of violations that took place more than a year before filing, but rather to protect defendants by ensuring that the action is filed within one year of the most recent date on which the defendant is alleged to have violated the FDCPA." 161 F. Supp. 2d at 273. Even so (and disregarding that Padilla was decided before Morgan), except for the court's use of the word "alleged," this language counsels against application of the continuing-violation doctrine in this case because it is in keeping with the Sixth Circuit's reading of Morgan that discriminatory acts that fall outside the limitations period but contribute to establish a pattern of severe and pervasive misconduct "may still be considered in determining liability *so long as other actionable conduct occurs within that period*." Wu v. Tyson Foods, Inc., 189 F. App'x 375, 378 (6th Cir. 2006) (citing Morgan, 536 U.S. at 118) (emphasis added). Here, as will be explained below, Plaintiff has not established actionable conduct within the limitations period.

7

Application of the continuing-violation doctrine in both <u>Joseph</u> and <u>Tarrant</u> made perfect sense. In <u>Joseph</u>, the court recognized that it "appear[ed] to be an open question as to whether the continuing violation doctrine might apply under the FDCPA," but found that "[a]lthough the analogy [was] not perfect," FDCPA cases presenting repeated and harassing phone calls could "be analogized to the continuing violation doctrine in hostile work environment cases[.]" 281 F. Supp. 2d at 1160. It therefore allowed plaintiff to invoke the doctrine where the evidence suggested that defendant made over 200 calls to plaintiff's residence during a nineteen-month period, approximately 75 of those calls were made within the limitations period, and several of those calls were made after plaintiff instructed defendant to stop calling her.

<u>Tarrant</u> involved two letters and 39 phone calls to plaintiff's home over the course of four months. Relying upon both <u>Morgan</u> and <u>Joseph</u>, Judge Trauger found the continuing-violation doctrine to be appropriate because plaintiff alleged that the "repeated calls constituted actionable harassment under the FDCPA, her claim did not involve discrete acts," and the acts could not "'be said to occur on any particular day." <u>Tarrant</u>, 2012 WL 140431, at *2 n.8 (quoting <u>Morgan</u>, 536 U.S. at 115).

In contrast, this case involves four letters, the date of each letter is readily ascertainable, and each letter was potentially a separately actionable violation of the FDCPA. The letters do not form a pattern of harassing conduct analogous to a hostile work environment claim. Instead, the sending of each letter was a discrete act.

"The vast majority of federal cases that have considered the issue have found that '[f]or statute-of-limitations purposes, discrete violations of the FDCPA should be analyzed on an individual basis.'" <u>Arvie v. Dodeka, LLC</u>, 2010 WL 4312907, at *9 (S.D. Tex. Oct. 25, 2010)

(citation omitted) (collecting cases). This Court agrees and finds the continuing-violation doctrine inapplicable.

**III.**

Plaintiff has not established that either of the remaining two letters violate the FDCPA.

The FDCA prohibits debt collectors from using unfair practices or making deceptive representations in connection with the collection of a debt. See, 15 U.S.C. § 1692e. That is, the "FDCPA speaks in terms of debt collection" and, "to be liable under the statute's substantive provisions, a debt collector's targeted conduct must have been taken 'in connection with the collection of any debt,' e.g., 15 U.S.C. §§ 1692c(a)-(b), 1692d, 1692e, 1692g, or in order 'to collect any debt,' id. § 16." Glazer v. Chase Home Finance LLC, 704 F.3d 453, 459-60 (6th Cir. 2013).

"Whether language used by a debt collector is deceptive or misleading is determined from the perspective of the least-sophisticated consumer." Grden v. Leikin Ingber & Winters PC, 643 F.3d 169, 172 (6th Cir. 2011). "The test is objective, and asks whether there is a reasonable likelihood that an unsophisticated consumer who is willing to consider carefully the contents of a communication might yet be misled by them." Id.

"[T]o be actionable, a communication need not itself be a collection attempt; it need only be 'connect[ed]' with one," and thus "an 'explicit demand for payment' is not always necessary for the statute to apply." Id. at 173 (quoting Gburek v. Litton Loan Serv. LP, 614 F.3d 380, 385 (7th Cir. 2010)). "[F]or a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor." Id.

"The 'animating purposes' of the communication is a question of fact that generally is committed to the discretion of the jurors, not the court." Estep v. Manley Deas Kochalski, LLC,

9

2014 WL 185391 (6th Cir. Jan. 16, 2014). Still, where "a reasonable jury could not find that an animating purpose of the statements was to induce payment," summary judgment is appropriate. Grden, 643 F.3d at 172.

Even accepting that the letters were sent at a time when the parties had no prior relationship, and when Plaintiff was in default, both of which are factors to be considered, Gburek, 614 F.3d at 385, this Court does not see how, from an objective viewpoint, a reasonable jury could conclude that an "animating purpose" of either of the two remaining letters was to induce payment.

**A.**

The July 8, 2011 letter was clearly intended to simply inform borrowers of a change in their loan servicer. It opens with the caption **"IMPORTANT MESSAGE ABOUT YOUR LOAN"** and states:

> Effective July 1, 2011, the servicing of home loans by our subsidiary-BAC Home Loans Servicing, LP, transfers to its parent company-Bank of America, N.A. Based upon our records as of June 30, 2011, the home loan account noted above is affected by this servicing transfer. The information contained in this communication does not change or affect any other communications you may have received or will receive regarding this servicing transfer.

(Docket No. 22-6). At the bottom of the page, the letter contains the following, bolded statement:

> **Bank of America, N.A. is required by law to inform you that this communication is from a debt collector attempting to collect a debt, and any information obtained will be used for that purpose.**

(Id). On page two, the letter references Plaintiff's debt as follows:

> (a) The amount of the debt: As of June 30, 2011, you owe $278,681.40. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Therefore, if you pay the amount shown above, an adjustment may be necessary after we receive your payment, in which event we will inform you or your agent before accepting the payment for collection.

(Id. at 2).

10

In her deposition and in response to Defendant's Motion for Summary Judgment, Plaintiff asserts (albeit without citation to any authority) that the bolded language about BANA being a debt collector attempting to collect a debt establishes that the July 8, 2011 letter violates the FDCPA. However, "the inclusion of the FDCPA notice is legally irrelevant" to the determination of whether a communication is a debt collection activity, Maynard v. Cannon, 401 F. App'x 389, 395 (10th Cir. 2010), and "[t]he mere fact that the letter states at the bottom that it 'is an attempt to collect a debt' does not transform the letter into an unlawful demand for payment,'" Lewis v. ACB Bus. Servs, Inc., 135 F.3d 389, 399 (6th Cir. 1998). "On the contrary, such a statement is required by the FDCPA." Id. (citing 15 U.S.C. § 1692e(11)); see also Boosahda v. Providence Dane LLC, 462 F. App'x 331, 334 (4th Cir. 2012) ("if the use of the statutorily required disclaimer is sufficient to establish an FDCPA claim, debt collectors will be placed in a conundrum, exposed to liability for both including the disclaimer and for omitting it"); Wade v. Regional Credit Ass'n, 87 F.3d 1098, 1100 (9th Cir. 1996) (notice that "[t]his has been sent to you by a collection agency and is an attempt to collect a debt and any information obtained will be used for that purpose" was non-threatening and "FDCPA expressly requires that collection notices contain such language").

In response to the motion for summary judgment, Plaintiff also points to the paragraph that sets forth the amount of the debt, arguing that BANA engages in "professorial linguistics" in its reading of the paragraph. (Docket No. 26 at 14). BANA does no such thing. The "if you pay the amount shown above" language can hardly be said to be a demand for payment; it merely informs Plaintiff of the change of servicer and the amount of debt. Nowhere in the letter does BANA make a demand for payment, there is no indication of a due date for a past or future payment, and there is no suggestion that any negative consequences would befall Plaintiff were she to fail to make

11

payment. See Bailey v. Sec. Na't Serv. Corp., 154 F.3d 384, 388-90 (7th Cir. 1998) (letter which does not demand payment but merely informs debtor about the current status of her account does not violate FDCPA).[2]

**B.**

On October 7, 2011, the Blank Rome law firm sent Plaintiff a letter on behalf of BANA. That letter was in response to a June 8, 2001letter from Plaintiff that asked for "everything in [her] file including payment history, origination date, promissory note . . . as well as all other documents pertaining to this loan, along with the document that shows Bank of America N.A. was transferred the servicing right from TBW." (Docket No. 22-8). That the Blank Rome letter was intended simply as a response to Plaintiff's letter is borne out by the fact that it begins by stating that it was written "for the sole purpose of responding to your correspondence dated July 8, 2011" in which "you dispute the validity of the debt which we understand to mean a request for debt verification under the [FDCPA]." (Docket No. 22-9); see Grden, 643 F.3d at 173 ("the decisive point is that [defendant] made the balance statements only after [plaintiff] called and asked for them").

The letter went on to reference the Note and Deed of Trust as evidence of Plaintiff's debt, and supplied the name of the current owner and servicer of the loan. Additionally, the letter supplied

---

[2] While the Court recognizes that an FDCPA violation occurs upon mailing, even if the most unsophisticated consumer somehow believed that the letter was an attempt to collect a debt, that notion would have been quickly dispelled because, shortly thereafter, BANA sent Plaintiff a letter indicating that the June 8 letter was sent in error, asking Plaintiff to ignore the letter, and apologizing for any confusion. Plaintiff concedes that she received the follow-up letter.

BANA invokes the *bona fide* error defense in relation to the follow-up letter pursuant to 15 U.S.C. § 1692k(c). The Court does not reach this issue because, as Plaintiff points out, to prevail on the defense a creditor must show, among other things, that it had procedures in place to avoid discoverable errors. See Hartman v. Great Seneca Finan. Corp., 569 F.3d 606, 614 (6th Cir. 2009); Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 538 F.3d 469, 476 (6th Cir. 2008). The summary judgment record does not establish that BANA had such procedures in place.

a payment history on the loan, attached numerous documents that Plaintiff had requested, and outlined fees that had previously been charged to the account that were not reflected in the payment history. The letter concluded by stating that in responding to Plaintiff's request, BANA was not limiting or waving any rights it might have.

As with the July 8 letter, the October 23, 2011 letter does not make a demand for payment, does not include any past or future payment due dates, and does not suggest that Plaintiff would suffer negative consequences were she to fail to make an unasked-for payment. While the letter does indicate that Plaintiff would receive under separate cover a payoff-demand statement "which will show all amounts necessary to pay off the Loan," (id.) it does not even suggest that the statement will include any payment due dates or require Plaintiff to make a payment.

Viewed objectively, the animating purpose of October 23, 2011 letter was not to induce payment, but to respond directly to Plaintiff's own requests. A "merely ministerial response to a debtor inquiry, rather than part of a strategy to make a payment more likely," Grden, 643 F.3d at 173, does not an FDCPA claim make. See Gburek, 614 F.3d at 384 (letter that is "merely a description of the current status of the debtor's account" did not violate FDCPA); Duby v. Ahermata, Adam & Von Allmen, P.C., 2012 WL 6705413, at *8 (E.D. Mich. Dec. 26, 2012) (law firm's response to plaintiff's letter disputing the validity of a debt was not "in connection with the collection of a debt, but was instead simply a ministerial act meant to verify the debt").

## V.

For the foregoing reasons, the Motion for Summary Judgment filed by BANA will be granted and Plaintiff's claims will be dismissed.

An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE